ALEXSIS C. BEACH & RACHEL LEDERMAN, ATTORNEYS
1720 BROADWAY, SUITE 430, OAKLAND, CA 94612
PHONE: (415) 282-9300   FAX: (510) 590-9296
rachel@sfbla.com

The Honorable Phyllis Hamilton, United States District Judge
Re: *NAACP v. City of San Jose,* No. 4:21-cv-01705-PHJ           March 22, 2022

## Joint Letter re Defendant's Responses to Plaintiffs' Written Discovery

Dear Judge Hamilton:

Pursuant to the Court's *Standing Order Regarding Discovery Disputes, Protective Orders, and ESI Orders*, the parties submit this Joint Letter regarding discovery disputes concerning Defendant's responses to Plaintiff's written discovery.

This is a §1983 lawsuit brought against the City of San Jose and its police officers and officials by a class of Plaintiffs who attended demonstrations in San Jose from May 29 – May 31, 2020, based on allegations that Defendants violated their First and Fourth Amendment rights. Trial is presently set for October 23, 2023, and the fact discovery cut-off is October 14, 2022.

On October 13, 2021, Plaintiffs served a first set of interrogatories and requests for production on Defendant City. Documents were produced on a rolling basis, but Defendant has not completed document production. Counsel have exchanged meet and confer correspondence regarding Defendant's responses, and met by video teleconference on February 14, 2022, for an hour and a half. Defendant's counsel agreed to further review each issue and to follow up on February 18. Defendant has since then provided a series of responses to some of the issues raised by Plaintiffs, each time requesting more time to complete their response. The parties are continuing to meet and confer on some issues, but they submit this Joint Letter regarding the discovery disputes that are now ripe.

**DISPUTE NO. 1: Is Defendant obligated to produce the metadata and "Audit Logs" associated with police officer body worn camera ("BWC") videos?**

**Plaintiffs' Position:** The BWC footage is extremely important evidence in this case. Not only will it capture the incidents that are the bases of Plaintiffs' claims, but the events leading up to them, and likely the identities of DOE defendant officers. There is an enormous amount of BWC footage at issue, 3,000 videos according to Defendant. The request asked for all metadata. San Jose Police Officers use Axon body cameras, which come with access to the Axon website and software, evidence.com. Evidence.com stores the BWC footage, along with all the metadata related to who took the footage, when, and where (by GPS coordinates); and protects chain of custody, by ensuring that the footage stored can be traced from the individual officer to the ultimate use in (usually criminal) court, with digital proof the footage not been altered. Together, this metadata is called an "audit log". It includes the officer names, date/time stamps, comments officers may add, any edits and with whom the video was shared, when. In addition, when a user clicks on an individual video in the Evidence.com platform, a sidebar pops up that includes the geolocation in the form of a map and trace line. This information would allow Plaintiffs to narrow down relevant videos and provide other relevant information. Urban law enforcement agencies share pertinent BWC videos along with all of their metadata including geolocation with

prosecutors and criminal defense attorneys on a daily basis; evidence.com is designed for the very purpose of making it easy to track and produce this information in litigation.

Defendant should be ordered to produce all metadata including geolocation and Audit Logs associated with the BWC footage no later than April 30, 2022.

**Defendant's Position:** Producing audit logs for 3,000 videos will be unduly burdensome and not proportionate to the needs of the case. The City has already disclosed the relevant metadata for each video: the officer name, the date of the video, and the start time of the video. The metadata unique to the audit logs are actions taken after the video's creation, including tags added, when the video was accessed (by whom and by IP address), when the video was shared, when a copy was created, where the video was copied, and when and by whom the video was downloaded, among other actions. Much of this will be redacted as attorney work product, which should protect information regarding which attorneys or legal staff accessed the video, how many times, and when. In addition, the City would need to redact the IP addresses that accessed the videos for cybersecurity reasons. As the metadata not already disclosed is of little relevance, it would be unduly burdensome for the City to access each of the 3,000 video files, download the audit logs, and manually redact them. The City has not redacted or edited any of the videos, and any cutting, redacting, muting of sound would be apparent upon viewing the video. Chain of custody is seldom an issue in civil cases, and any concerns by Plaintiffs can be addressed in other ways.

As for geolocation, it would be unduly burdensome for the City to provide Plaintiffs access to Evidence.com. SJPD has a contract with the District Attorney's Office that makes it a "partner agency," so SJPD can provide access to an entire case easily on Evidence.com. This is not true for the Office of the Public Defender (where there is no contract), and the City does not enter into similar contracts with private entities. Without a contract, the City must provide a separate access link for every single video – here, the City would have to create 3,000 separate access links. To do so merely to show geolocation information that is readily apparent from the content of each video would be unduly burdensome and not proportionate to the needs of the case.

**DISPUTE NO. 2:** End Date for Production of Documents & Service of Amended Responses

**Plaintiffs' Position:** The parties disagree on when Defendant must complete its production of all of the responsive documents that it has agreed to produce. When a party indicates production will be completed in stages, it must indicate the beginning and end dates of the production. (Adv. Comm. Notes to 2015 Amendments to Rule 34.)

Plaintiffs served their written discovery October 13, 2021, and non-expert discovery will close on October 14, 2022. Plaintiffs must take numerous depositions in this matter, which involves three days of demonstrations and many sub-incidents, but cannot do so until they have reviewed the full universe of documents, but Defendant has yet to complete its production, or even commit to a date upon which it will do so. Defendant has represented that there are "close to 3,000" videos, but has not produced anywhere near this amount. There are also a number of requests for production that Defendant admits it has yet to either (1) conduct a search for responsive documents, or (2) finalize a privilege log. (Defendant's responses to requests for production e.g., 3, 6, 7, 14, 15, 18, 22, 23, 24, 25, 26, 31, 36; Defendant's responses to interrogatories 5 and 6.)[1]

---

[1] The full catalog of inadequate responses is too lengthy to include in this letter, and so is attached as Exhibit 1 for the Court's review.

Defendant should be ordered to serve its amended responses to discovery requests and serve its production – complete with any privilege logs and supporting affidavits – no later than April 30, 2022.

**Defendant's Position:**  At the time of the City's written discovery responses, it did not yet know the volume of responsive documents; providing a production end date is difficult under these circumstances.  The City instead has made rolling productions every three weeks.  The City also started searching for documents after the parties met and conferred, and Plaintiffs narrowed the scope of certain Requests.  The City will do its best to complete its production by April 30, 2022.

**DISPUTE NO. 3: Whether Defendant has complied with its obligation to state whether any responsive materials are being withheld, giving enough information to allow the dispute to be adjudicated**. (RFP Nos. 1-9, 11-12, 20, 30, 31, and 36.)

**Plaintiffs' Position:** A party's response to a request for production "must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B). "An objection must state whether any responsive materials are being withheld based on that objection. An objection to part of a request must specify the part and permit inspection of the rest." Fed. R. Civ. P. 34(b)(2)(C).

> The specificity of the objection ties to the new provision in Rule 34(b)(2)(C) directing that an objection must state whether any responsive materials are being withheld based on that objection. An objection may state that a request is overbroad, but if the objection recognizes that some part of the request is appropriate the objection should state the scope that is not overbroad.
> …
> This … should end the confusion that frequently arises when a producing party states several objections and still produces information, leaving the requesting party uncertain whether any relevant and responsive information has been withheld on the basis of the objections. The producing party does not need to provide a detailed description or log of all documents withheld, but does need to alert other parties to the fact that documents have been withheld and thereby facilitate an informed discussion of the objection. An objection that states the limits that have controlled the search for responsive and relevant materials qualifies as a statement that the materials have been "withheld." Committee Notes on the 2015 Amendment to Rule 34.

In each of the above-referenced responses, Defendant has asserted objections, and agreed to produce certain material, while failing to (1) indicate whether any materials are being withheld based on a stated objection, (2) identify which objection is the basis for withholding materials, or (3) define the scope of the request that is not objectionable. As to a number of requests, Defendant states it has not completed its search, collection, or review of possibly responsive documents such that it can say whether it is withholding documents or not. Yet it has been five months since the requests were served, and these commonly requested documents should be readily accessible, e.g., police use of force policies, Internal Affairs files.

Defendant should be ordered to amend its responses to state whether it is withholding documents, or refusing to conduct a search for documents, no later than April 30, 2022.

**Defendant's Position:**  Rule 34 does not require a party to state what documents it is withholding, which is often difficult when broad requests could capture any number of documents. The Rule 34 Committee Notes state that the producing party need only "alert other parties to the fact that documents have been withheld and thereby facilitate an informed discussion of the objection. An objection that states the limits that have controlled the search for responsive and relevant materials qualifies as a statement that the materials have been 'withheld.'" The City has done so in each of its responses. Its objections signaled it disagreed with the scope of the Requests (e.g., terms "policies," "pyrotechnic devices," and "distraction devices" as being vague and ambiguous), and the City specifically stated which categories of documents it would produce (e.g., policies in place on May 29, May 30, and May 31, 2020 on crowd control, crowd management, mass arrests, interacting with people with disabilities, or the use of batons, impact munitions, flash bangs, chemical agents, and other 'less than lethal' weapons). This is enough information to discern what documents the City would withhold (or for which it will not conduct a search).  *See Rojas v. Bosch Solar Energy Corp.*, No. 18-cv-05841-BLF(NC), 2020 WL 8617414, at *3 (N.D. Cal. Aug. 28, 2020); *see also* Fed. R. Civ. P. 34 2015 Committee Notes (identifying as proper "a statement that the responding party will limit the search to documents or electronically stored information created within a given period of time prior to the events in suit, or to specified sources").  The responses allowed the parties to discuss in an almost two-hour videoconference on February 14 what the City was and was not willing to collect and/or produce.  The City has met the requirements of Rule 34.

**DISPUTE NO. 4: Whether Defendant is required to respond to contention interrogatories at this time.** (Defendant's responses to interrogatories 14 – 16.)

**Plaintiffs' Position:** Parties may serve contention interrogatories early in the discovery process where there is "good reason to believe that answers to its well-tailored questions will contribute meaningfully to clarifying the issues in the case, narrowing the scope of the dispute, or setting up early settlement discussions, or that such answers are likely to expose a substantial basis for a motion under Rule 11 or Rule 56." *In re Convergent Technologies Securities Litigation*, 108 F.R.D. 328, 338-39 (N.D. Cal. 1985). Consistent with *Convergent Techs. Sec. Litig.*, Plaintiffs have crafted "specific, limited (in number) questions." Defendant "must examine such questions in good faith and, where it appears that answering them would materially contribute to any of the goals discussed [above], must answer the interrogatories." *Id*. at 339.

Defendant should be ordered to amend its responses to these interrogatories, providing substantive responses, no later than April 30, 2022.

**Defendant's Position:**   Contention interrogatories are generally disfavored "before substantial documentary or testimonial discovery has been completed." *In re Convergent Technologies Securities Litigation*, 108 F.R.D. 328, 338 (N.D. Cal. 1985).  Contention interrogatories often must therefore wait until "near the close of discovery" to be propounded. *Campbell v. Facebook Inc.*, 2015 WL 3533221, at *6 (N.D. Cal. June 3, 2015). Interrogatories 14-16 ask the City to describe Plaintiffs' actions during the protests, all persons with personal knowledge of plaintiffs' actions, and all documents to support the City's response about plaintiffs' actions.  Requiring a response that would bind the City six months before the close of discovery would be premature and unduly burdensome. The City would have to review a large amount of evidence before it

could meaningfully respond. Most Plaintiffs were not identified by SJPD during the protests, so information about their actions would be from their deposition testimony and the bodyworn camera footage. *See Haggarty v. Wells Fargo Bank, N.A.*, 2012 WL 4113341, at *2 (N.D. Cal. Sept. 18, 2012) ("[I]n cases where [parties] presumably have access to most of the evidence about their own behavior, it is not at all clear that forcing [the opposing party] to answer these kinds of questions, early in the pretrial period, is sufficiently likely to be productive to justify the

burden that responding can entail."). Identifying Plaintiffs on 3,000 videos is time-consuming and difficult given the number of people on the videos, and the City does not even know what some Plaintiffs looked like during the protest.

**DISPUTE NO. 5: Whether Defendant is required to respond to Plaintiff's interrogatories seeking identities of persons and documents supporting its affirmative defenses**. (Defendant's responses to interrogatories 23 – 24.)

**Plaintiffs' Position:** "Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. Proc. 33(b)(3). Here, Defendant's position appears to be that its obligation is only to respond to these responses before the close of fact discovery, which would preclude Plaintiff from investigating its responses at depositions.

Defendant should be ordered to amend its responses to these interrogatories, providing substantive responses, no later than April 30, 2022.

**Defendant's Position:** Providing information on "all documents that support" the defenses and identifying "all persons" with personal information will be a time-consuming and unduly burdensome task at this point in the case. Many of the defenses concern the reasonableness of the use of force, so the City must review the bodyworn videos and take depositions to meaningfully respond. In addition, one affirmative defense is that Plaintiffs' failed to mitigate their damages – this requires discovery into Plaintiff's medical records, possibly deposing their treating physicians, etc. The City has not yet engaged in much of this discovery.

**DISPUTE NO. 6: Whether Defendant is required to produce all documents it provided an outside vendor to create annual analyses of SJPD use of force the past five years** (RFP No. 35.)

**Plaintiffs' position:** The underlying material is highly relevant to Plaintiffs' *Monell* and injunctive relief claims which allege a pattern and practice of excessive force, failure to train and discipline. These claims are not limited to the specific weapons used at the subject incidents. While this request may lead to large volume of documents, it is proportional in that this is a class action and action by organization plaintiffs, alleging longstanding and continuing, widescale civil rights violations.

**Defendant's Position:** Among the documents the City provides to its vendor are the police reports for each use of force event. While SJPD keeps lists identifying these events, neither SJPD nor the vendor maintained the police reports that SJPD provided before April 2020. It would be unduly burdensome and time-consuming to collect and produce all 3,500 police reports again. It would also not be proportionate to the needs of the case to produce documents after June 7, 2020. *Monell* requires that the City had notice of unconstitutional policies or practices *before* the incident at issue, so later uses of force would be irrelevant. Nor is this information relevant to

Plaintiffs' request for injunctive relief. The City has not experienced any protests since June 2020, and evidence of force used outside the protest context (as well as uses of force not at issue during the protests) would not be admissible to support an argument for injunctive relief, where there must be a significant likelihood that Defendants will repeat the alleged violations.

    Respectfully submitted,

    /s/ Rachel Lederman, Attorney for Plaintiffs

    /s/ Yue-Han Chow, Sr. Deputy City Attorney, for Defendants

# EXHIBIT 1