UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NAACP OF SAN JOSE/ SILICON VALLEY, et al.,

Plaintiffs,

v.

CITY OF SAN JOSE, et al.,

Defendants.

Case No. 21-cv-01705-PJH

**ORDER RE DISCOVERY LETTER BRIEFS**

Re: Dkt. No. 62, 63, 65

Before the court are two discovery letter briefs filed by the parties.

First discovery letter brief (Dkt. 62)

In the first discovery letter brief currently before the court (Dkt. 62), plaintiffs explain that they seek to depose San Jose Mayor Sam Liccardo and Independent Police Auditor Shivaun Nurre, while defendants object to producing both witnesses because they are "high-ranking officials." See Dkt. 62.

When a party seeks the deposition of a high-level official (also referred to as an "apex" deposition), courts seek to prevent the risk of abuse or harassment by limiting such depositions where the discovery sought "can be obtained from some other source that is more convenient, less burdensome, or less expensive." See, e.g., Apple Inc. v. Samsung Electronics Co., Ltd., 282 F.R.D. 259, 263 (N.D. Cal. 2012).

"In determining whether to allow an apex deposition, courts consider (1) whether the deponent has unique first-hand, non-repetitive knowledge of the facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods." Apple, 282 F.R.D. at 263 (citing In re Google Litig., 2011 WL 4985279, at *2, (N.D. Cal. Oct. 19, 2011)). However, "a party seeking to prevent a deposition carries a heavy burden to show why discovery should be denied." Apple, 282

1   F.R.D. at 263 (citing Celerity, Inc. v. Ultra Clean Holding, Inc., 2007 WL 205067, at *3
2   (N.D. Cal. Jan. 25, 2007)).  Thus, it is very unusual "for a court to prohibit the taking of a
3   deposition altogether absent extraordinary circumstances." Apple, 282 F.R.D. at 263.
4         As to Mayor Liccardo, plaintiffs argue that he is named as a defendant in his
5   individual capacity and has had an opportunity to seek dismissal of the claim, arguing
6   those factors should weigh in favor of allowing the deposition to go forward.
7         Defendants also argue that the mayor was not involved in enacting the curfew at
8   issue in this lawsuit, asserting that he "has no role in any emergency response." See
9   Dkt. 62 at 3-4.  However, plaintiffs allege that the mayor was indeed involved in
10  emergency response, arguing that "[s]hortly after the events at issue in this case, he was
11  involved in city hearings on the use of force at the demonstrations, and introduced
12  measures calling for the Police Chief and IPA to account for the aggressive measures
13  used at the demonstrations," and that "Liccardo was involved in passing and publicizing
14  of the curfew, and made statements about who would be allowed on the streets after the
15  curfew hour." See id. at 2.
16        While plaintiffs have shown that defendant Liccardo may have relevant information
17  that is properly discoverable, they have not yet shown that they have attempted to seek
18  the evidence through less burdensome or alternative sources, such as through written
19  discovery or depositions of other officials.  Defendants have also cited relevant case law
20  showing that the "normal rule" is to not permit depositions of mayors unless the
21  information cannot be obtained from another source.  See Harmston v. City and County
22  of San Francisco, 2007 WL 3306526 at *3 (N.D. Cal. Nov. 6, 2007).  Thus, based on the
23  current record, plaintiffs' request to depose defendant Liccardo is DENIED.
24        As to independent police auditor Nuree, defendants similarly argue that she is a
25  high-ranking official who should not be subject to deposition, but defendants have not
26  cited any case law reaching that conclusion on similar facts.  Defendants assert that the
27  IPA position is "sufficiently close, one level, below the highest peak" of the "corporate
28  mountain range," but that assertion appears to be conclusory.  Moreover, plaintiffs

correctly point out that city police chiefs have been required to sit for depositions in numerous cases, which weakens the defendants' argument that the IPA is sufficiently high-ranking as to be given the same treatment as the mayor.  Thus, the court does not accept defendants' argument that the IPA falls within the narrow category of "apex" officials such as the mayor.

However, as to the IPA, defendants separately argue that her testimony would be subject to the deliberative process privilege or the mental process privilege, and argues that her deposition should be precluded on the basis of those privileges.  See Dkt. 62 at 3-4.  Defendants also reference officer privacy and the qualified privilege for official information as reasons to preclude the deposition of the IPA.  Id. at 5.

As a threshold matter, it is necessary to clarify the nature of the privilege at issue.  First, "in a civil rights case brought under federal statutes, questions of privilege are resolved by federal law," and "state privilege doctrine, whether derived from statutes or court decisions, is not binding on federal courts in these kinds of cases."  Kelly v. City of San Jose, 114 F.R.D. 653, 655-56 (N.D. Cal. 1987).  Second, "the 'deliberative process' privilege, closely related to the self-critical analysis privilege, is also inappropriate for use in civil rights cases against police departments."  Soto v. City of Concord, 162 F.R.D. 603, 612 (N.D. Cal. 1995).  Because the "mental process" privilege is related to the deliberative process privilege, the court finds it equally inapplicable to civil rights cases such as the present case.

Instead, Kelly and Soto (and their progeny) make clear that the relevant privilege for evaluating the discoverability of police records and testimony is the "official information privilege," which is a qualified privilege that requires balancing the "interests of law enforcement, privacy interests of police officers or citizens who provide information to or file complaints against police officers, interests of civil rights plaintiffs, the policies that inform the national civil rights laws, and the needs of the judicial process."  Kelly, 114 F.R.D. at 660.  The test adopted by Kelly, and followed by courts throughout this district and circuit, is "a balancing approach that is moderately pre-weighted in favor of

disclosure." Id. at 661; see also DeArmand E. v. City of Antioch, 2009 WL 1704686, at *3 (N.D. Cal. June 17, 2009); Sanchez v. City of San Jose, 250 F.R.D. 468 (N.D. Cal. 2008); Dowell v. Griffin, 275 F.R.D. 613 (S.D. Cal. 2011).

Under Kelly, the party seeking to prevent disclosure must submit an affidavit or declaration from a relevant agency official, which must include:

> (1) an affirmation that the agency generated or collected the material in issue and has in fact maintained its confidentiality (if the agency has shared some or all of the material with other governmental agencies it must disclose their identity and describe the circumstances surrounding the disclosure, including steps taken to assure preservation of the confidentiality of the material),
> (2) a statement that the official has personally reviewed the material in question,
> (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer,
> (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interests, and
> (5) a projection of how much harm would be done to the threatened interests if the disclosure were made.

Kelly, 114 F.R.D. at 670.

While defendants did not submit an affidavit or declaration according to the procedure set forth in Kelly for this dispute, the court will consider the substance of the arguments against disclosure made in the joint letter brief. In particular, defendants cite officer privacy as the primary reason for invoking the official information privilege. See Dkt. 62 at 5. Defendants argue that "by deposing the IPA, plaintiffs may circumvent state and federal privileges by seeking the content of interviews conducted during the IPA's investigation." Id.

First, as discussed above, state privileges are not binding here. Second, regarding the official information privilege, both the Kelly and Soto courts specifically addressed the question of whether officer privacy should preclude discovery into complaints made against officers, including non-defendant officers. Both courts acknowledged that privacy rights are "not inconsequential," but also that plaintiffs' need

for the information is great because "in civil rights cases against police departments, plaintiffs cannot usually obtain information of comparable quality from any other source." See Kelly, 114 F.R.D. at 660; Soto, 162 F.R.D. at 616-17.

While neither party cites cases involving the specific scenario of the deposition of an independent police auditor, the privacy considerations at issue in this case are substantially similar to those raised in Soto, in which the court concluded that "the internal affairs histories and statements of any police officers on the scene are relevant, regardless of whether or not those officers are named parties to the action." 162 F.R.D. at 611 (emphasis in original). If the entire internal affairs histories of the officers are relevant and unprotected by the official information privilege, it follows that the IPA's testimony on those matters would be equally discoverable.

Moreover, defendants have not shown why designating the IPA's testimony as confidential under the protective order would not adequately address any concerns of officer privacy. The Soto court emphasized that the use of a protective order "substantially reduces the confidentiality interests asserted by defendants." 162 F.R.D. at 614 (granting request to compel "police internal affairs investigations relating to the incident" and "statements or interviews of witnesses, informants, plaintiff, and any police officers who had any role or contact with the case"); see also DeArmand, 2009 WL 1704686, at *5 (granting request to compel "all records of internal affairs investigations concerning the [subject] incident" because "the public interests in favor of disclosure, such as civil rights and justice in individual cases, clearly outweigh the public interests in favor of secrecy, such as the privacy rights of officers").

In short, defendants have not met their burden to show that the testimony of the independent police auditor would be protected by the official information privilege, such that the deposition should be barred entirely. Instead, as in Soto, the court concludes that the use of a protective order will minimize any possible concerns about officer privacy. And any concerns that defendants have identified regarding questions that go beyond the IPA's percipience as a witness may be addressed through objections made

on the record.

Thus, as to the parties' first joint discovery letter brief (Dkt. 62), plaintiffs' request to order the deposition of Mayor Sam Liccardo is DENIED, and plaintiffs' request to order the deposition of independent police auditor Shivaun Nuree is GRANTED.  The parties are directed to meet and confer regarding the timing of the IPA's deposition.

Second discovery letter brief (Dkt. 63, 65)

In the second discovery letter brief before the court, the parties raise five disputes. See Dkt. 63, 65 (amended version of discovery letter brief)[1].  The court will address each dispute in turn.

1.    Dispute 1

The first dispute centers on plaintiffs' request for "all complaints, investigation files, interviews, reports, findings by or to the SJPD Internal Affairs Unit (IA), and Office of the Independent Police Auditor ("IPA"), and all other use of force investigations concerning the 2020 protests; and past complaints against the named defendants for excessive force or dishonesty."  Dkt. 65 at 1.

Defendants raise four objections to plaintiffs' request: (1) unnamed officers' privacy rights, (2) class and Monell discovery should be limited to the complaint's allegations, (3) documents regarding uncompleted investigations and internal opinions are privileged, and (4) disclosure would taint a pending investigation.  First, as a matter of organization, the court's view is that objections (1), (3), and (4) all raise issues that are implicated by the official information privilege, so the court will address all three objections together.  To the extent that defendants also attempt to invoke the deliberative process privilege, the court refers to the earlier discussion from Soto and Kelly that the deliberative process privilege is "inappropriate for use in civil rights cases against police departments."  See Soto, 162 F.R.D. at 612; Kelly, 114 F.R.D. at 653.

As discussed above, application of the official information privilege requires the

---

[1] Because the parties filed this amended discovery letter brief, the earlier version of the letter brief (Dkt. 63) is terminated as moot.

party invoking the privilege to submit an affidavit or declaration meeting five requirements, including "a specific identification of the governmental or privacy interests that would be threatened by disclosure," and "a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interests." Kelly, 114 F.R.D. at 670.

Defendants have submitted an "official information privilege declaration" from Lieutenant Jaime Jimenez regarding the documents at issue in Dispute 1. The declaration identifies the relevant government and privacy interests as (1) complainants' identities and contact information in tolled investigations, (2) documents collected and investigative report drafts in tolled investigations, and (3) names of non-defendant officers in completed investigations as to defendants. See Dkt. 65-2. These categories roughly correlate with the objections made in the body of the discovery letter brief regarding unnamed officers' privacy rights and the pendency of uncompleted investigations. See Dkt. 65 at 2-3.

Regarding the privacy interests of non-defendant officers, the court refers to the discussion earlier in this order regarding the privacy interests of non-defendant officers, which, while "not inconsequential," must be balanced with plaintiffs' interest and the public interest in allowing full discovery of civil rights claims. In particular, as in Soto, defendants do not adequately address why any privacy concerns would not be addressed through the use of a protective order. Defendants' declaration offers only the conclusory assertion that "even if the documents at issue were made available only to the attorneys in this case, it is still an invasion of privacy rights for an investigation into the use of force by a non-defendant officer to be disclosed." Dkt. 65-2, ¶ 12. Defendants' assertion directly contradicts the holding of Soto, which has been followed by numerous courts in this district and circuit. See Soto, 162 F.R.D. at 617 ("In cases with similar factual situations as the case at bar, district courts in the Ninth Circuit have found that the privacy interests police officers have in their personnel files do not outweigh the civil rights plaintiff's need for the documents."); see also, e.g., see also DeArmand, 2009 WL

1704686, at *3 ("the public interests in favor of disclosure, such as civil rights and justice in individual cases, clearly outweigh the public interests in favor of secrecy, such as the privacy rights of officers"); Jaramillo v. City of San Mateo, 2013 WL 5692425 (N.D. Cal. Oct. 16, 2013) (the "qualified privilege is outweighed by the interests of civil rights plaintiffs, the policies that inform the national civil rights laws, and the societal need for transparency of the judicial process."); Doe v. Gill, 2012 WL 1038655 (N.D. Cal. Mar. 27, 2012) ("[c]urrent case law suggests the privacy interests police have in their records do not outweigh a plaintiff's interests in civil rights cases")

Overall, defendants have not met their burden to show, under the "balancing test moderately pre-weighted in favor of disclosure" set forth in Kelly, that disclosure under a protective order would create a substantial risk of harm to significant privacy interests, and thus, the court finds that the privacy interests of non-defendant officers are not sufficient to warrant protection of these documents under the official information privilege.

The other two bases set forth in the Jimenez declaration are both based on the premise that disclosure of the documents in tolled investigations could result in witnesses having "their memories of the event inadvertently affected by information they did not have at the time" or "information that may be inaccurate or incomplete." Dkt. 65-2, ¶¶ 7, 10. Defendants do not cite any authority for their argument, and indeed, to accept defendants' argument would be to effectively shield the internal affairs records from all disclosure. Defendants tolled the investigations in favor of this lawsuit (and others in this district), and in order for these suits to be resolved on the merits, the parties must have the benefit of a full evidentiary record. Moreover, any concern about witnesses being given false information that taints their memories is highly speculative. Given that each of Kelly, Soto, and DeArmand, among other cases, ordered the release of a broader scope of internal affairs files than is being requested here, the court concludes that defendants have not met their burden under the Kelly test to show that the official information privilege should prevent disclosure of the requested records.

That leaves defendants' objection that class and Monell discovery should be

limited to the complaint's allegations. Defendants rely on a single case here, Jenkins v. Humboldt County, 2010 WL 1267113 (N.D. Cal. Mar. 29, 2010). Jenkins does not support defendants' argument, as it addressed Monell claims in an entirely different context. Jenkins involved the court's pre-screening review of an in forma pauperis complaint to determine whether the complaint adequately stated a claim under the Rule 12(b)(6) standard. Jenkins does not say anything about the proper scope of discovery for police records in lawsuits against police departments. Moreover, defendants' arguments do not make clear that plaintiffs' requested discovery actually does go beyond the scope of the complaint's allegations. Defendants have not identified any specific portion of the requests that reaches too far. Thus, the court concludes that defendants' arguments regarding the scope of discovery do not provide a basis for preventing disclosure of the documents referenced in dispute 1.

Thus, having previously concluded that the official information privilege and/or officer privacy concerns do not preclude discovery of the documents referenced in dispute 1, the court GRANTS plaintiffs' request as to dispute 1. Specifically, defendants are ordered to produce "all complaints, investigation files, interviews, reports, findings by or to the SJPD Internal Affairs Unit (IA), and Office of the Independent Police Auditor ("IPA"), and all other use of force investigations concerning the 2020 protests," and defendants are further ordered to produce "past complaints against the named defendants for excessive force or dishonesty" for a time period of five (5) years preceding the 2020 protests, with the documents being protected as designated under the protective order.

2.   Dispute 2

The second dispute relates to "privilege claims as to redacted and withheld police documents." Specifically, defendant has redacted and withheld a number of policy and training documents, which are listed on an attached privilege log. See Dkt. 65-3.

For this dispute, defendants acknowledge that the official information privilege from Kelly is the relevant privilege, and offer the declaration of Lt. Lee Tassio in support.

9

See Dkt. 65-1. The Tassio declaration states that "the sensitive information in these materials includes (1) skirmish line formations and movements, (2) baton positions, strikes, and retention techniques, (3) less lethal weapons tactics for use, (4) diversionary device tactics for use, (5) tactics and strategies to utilize during unlawful assemblies to disperse crowds, identify, separate and arrest agitators." Id., ¶ 5. The Tassio declaration further states that the sensitive information also includes information unrelated to crowd control, such as hostage rescue and barricaded suspects. Id. The Tassio declaration further states that "SJPD does not disclose this information to the public" and that "disclosure of this information to anyone outside of law enforcement could reduce the effectiveness of these tactics and endanger officers." Id., ¶ 6.

Defendants' declaration fails to meet the fourth element of the Kelly test, that disclosure under a protective order would still "create a substantial risk of harm to significant governmental or privacy interests." The declaration offers only that "attorneys are also citizens who have a First Amendment right to protest," using the fact that attorneys have First Amendment rights as a reason to prevent them from viewing the documents. See Dkt. 65-1, ¶ 8. This court knows of no authority for the argument that anyone with First Amendment rights should be barred from viewing police department documents, and indeed, such a rule would bar even judges from viewing the documents in camera. Defendants' argument is squarely rejected, and plaintiffs' request for the documents that are the subject of dispute 2 is GRANTED in large part. Specifically, defendants are ordered to produce the documents listed in the privilege log submitted with the letter brief (Dkt. 63-3). The documents are to be produced unredacted, with the only exceptions being that defendants may redact information on the limited subjects identified in the Tassio declaration, namely (1) hostage rescue situations, (2) barricaded suspects, and (3) covert surveillance techniques. See Dkt. 63-1, ¶ 5. The documents shall otherwise be unredacted, and protected as designated under the protective order.

3.      Dispute 3

The third dispute is about the "manner of production" for "120 audio files of police

communications." Dkt. 65 at 3-4. Plaintiffs argue that "other police communications recordings that plaintiffs' counsel are familiar with from many other agencies state the date and time at regular intervals, but these do not." Id. at 3. Plaintiffs argue that defendants "presumably have a way to find the right communications recording for a particular time period and should be ordered to provide that to plaintiffs." Id.

Defendants rely on a declaration from Jessica Jones, a SJPD dispatcher. Dkt. 65-4. Her declaration provides details about the audio recording system used by the police, and how the files are not labeled with the date and time, but rather are organized within the internal system by date and time. Id., ¶ 5. The Jones declaration also provides more details regarding the use of event numbers and other information in the dispatch logs. See id. at ¶¶ 6-10.

Plaintiffs' request is not clear in setting forth specifically what they are asking for. Defendants' declaration describes the type of data that is generated by the audio recording system, and plaintiffs have not identified any specific type of data that they have requested but not received. Based on the current record, the court concludes that plaintiffs' request must be DENIED as to dispute 3.

4.     Dispute 4

The fourth dispute is about topic 7 on plaintiffs' Rule 30(b)(6) deposition notice, which covers "the identities of the officers who made the decisions to arrest plaintiffs Mahmoudreza Naemeh, Megan Swift, Alex Lee, and Shaunn Cartwright, and approved such arrests, and the basis for each of these arrests." Defendant produced the arresting officer for these four plaintiffs, but plaintiffs request a designee "who is prepared to testify about the higher level decision(s) to make arrests for curfew violations and other offenses at the demonstrations, and the instructions given to the officers for those arrests." Dkt. 65 at 4.

The court concludes that defendants have adequately produced a witness on topic 7. To the extent that plaintiffs seek testimony on the broader, higher-level question of who made the decision to arrest suspected curfew violators generally, that is a different

topic for a different Rule 30(b)(6) designee than the topic of who made the decisions to arrest the four identified plaintiffs. Accordingly, plaintiffs' request is DENIED as to dispute 4.

### 5. Dispute 5

The fifth dispute stems from topic 10 of plaintiffs' Rule 30(b)(6) deposition notice, which covers "all police warnings and orders issued to any and each of the named individual plaintiffs during the incident, including specifics as to each order, time of communication, duration of communication, and method of communication used to convey each warning or order to any and each of the plaintiffs." Dkt. 65 at 5. Defendant has objected to the topic as "unduly burdensome to the point of impossibility" and has not designated a witness on this topic.

The court concludes that plaintiffs' request is indeed unduly burdensome to the extent that it seeks specifics of every single "warning and order" issued to the plaintiffs over the course of the protests. That said, while it would be impossible for defendants to provide a witness (or witnesses) who can furnish that level of detail, it is reasonable to expect defendants to have a witness who can provide some details on the warnings given to crowds during the protests. Defendants may preserve their objection to the topic as drafted, and may provide testimony only to the extent reasonably practicable, but they provide no authority for the proposition that they may simply refuse to produce a witness on the topic entirely. Accordingly, plaintiffs' request as to dispute 5 is GRANTED in part and DENIED in part.

Thus, in sum, as to the second discovery letter brief currently before the court (Dkt. 65), plaintiffs' request is GRANTED as to dispute 1 and dispute 2, DENIED as to dispute 3 and dispute 4, and GRANTED in part and DENIED in part as to dispute 5.

**IT IS SO ORDERED.**

Dated: September 28, 2022

                                      /s/ *Phyllis J. Hamilton*
                              PHYLLIS J. HAMILTON
                              United States District Judge