RACHEL LEDERMAN, SBN 130192
Rachel Lederman & Alexsis C. Beach,
Attorneys
P.O. Box 40339
San Francisco, CA 94140-0339
Telephone: (415) 282-9300
rachel@sfbla.com

TIFANEI RESSL-MOYER, SBN 319721
Lawyers' Committee for Civil Rights of
San Francisco Bay Area
131 Steuart Street
San Francisco, CA 94105
Telephone: (415) 543-9444
tresslmoyer@lccrsf.org

R. MICHAEL FLYNN, SBN 258732
Flynn Law Office
1720 Broadway, Ste 430
Oakland CA 94612
Telephone: (510) 893-3226
michael@flo-law.com

*Attorneys for Plaintiffs*

JAMES B. CHANIN, SBN 76043
Law Offices of James B. Chanin
3050 Shattuck Avenue
Berkeley, CA 94705
Telephone: (510) 848-4752, Ext. 2
jbcofc@aol.com

Chris Johnson, SBN 183219
Alicia J. Donahue, SBN 117412
Tammy B. Webb, SBN 227593
SHOOK, HARDY & BACON L.L.P.
555 Mission Street, Suite 2300
San Francisco, CA 94105
Tel: 415.544.1900
cjohnson@shb.com
adonahue@shb.com
tbwebb@shb.com

Mitchell Engel (*Appearance Pro Hac Vice*)
mengel@shb.com
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108-2613
Tel: 816-474-6550

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NAACP OF SAN JOSÉ/ SILICON VALLEY;
, et al.,

Plaintiffs,

v.

CITY OF SAN JOSE, et al.

Defendants.

Case No. 4:21-cv-01705-PJH

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

Date: February 23, 2023
Time: 1:30 p.m.
Oakland Courthouse
Judge Phyllis J. Hamilton

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**NOTICE OF MOTION**

PLEASE TAKE NOTICE THAT on February 23, 2023, at 1:30 pm, or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable Phyllis J. Hamilton of the United States District Court for the Northern District of California, by Zoom videoconference, Plaintiffs will and hereby do move this Court, pursuant to Federal Rule of Civil Procedure 23, for an order certifying two classes: an Injunctive Relief Class and a Damages Class.

The Injunctive Relief Class is defined as: All persons who have in the past participated, presently are participating, or may in the future participate in, or be present at, demonstrations within the City of San Jose in the exercise of their rights of free speech, assembly and petition. The injunctive relief organizational class representatives are the NAACP of San Jose/Silicon Valley and the San Jose Peace and Justice Center, and plaintiffs Joseph Cañas, Leslie Vasquez, Peter Allen, Shaunn Cartwright, Yessica Riles, José Gustavo Flores Rodriguez, and Cindy Cuellar.

The Damages Class is defined as all persons present at protests regarding the killing of George Floyd in the City of San Jose on May 29, 2020 or May 30, 2020 who were struck by either Projectile Impact Weapons (including 37mm and 40mm projectiles and bean-bag shotguns), batons, or otherwise physically struck by a San Jose Police Department officer. The Class Representatives for the Damages Class are named plaintiffs Joseph Canas, Leslie Vasquez, Peter Allen, Shaunn Cartwright, Yessica Riles, Jose Gustavo Flores Rodriguez, and Cindy Cuellar.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiffs further request the Court enter an order designating them as class representatives and appointing their counsel as class counsel. Plaintiffs also request the Court order the parties to meet and confer and present the Court, within thirty days of an order granting class certification, with a proposed notice to the certified classes.

Plaintiffs' motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, and the Declarations and [Proposed] Order submitted herewith. In addition to relying on these documents and Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs also intend to rely on any pleadings and documentary evidence they file in connection with their reply brief in support of their motion for class certification, as well as any argument or documentary evidence as may be presented at the class certification hearing, and the complete pleadings and files in this action.

# TABLE OF CONTENTS

I.     INTRODUCTION ..................................................................................................1

II.    LEGAL STANDARD...........................................................................................2

III.   ARGUMENT .......................................................................................................3

    A.   The class is adequately defined. ...................................................................5

    B.   Plaintiffs meet each of the requirements of Rule 23(a). ...............................6

        1.   Rule 23(a)(1) – Numerosity................................................................7

        2.   Rules 23(a)(2) – Commonality ...........................................................7

        3.   Rule 23(a)(3) – Typicality ................................................................12

        4.   Rule 23(a)(4) – Adequacy ................................................................13

    C.   The Rule 23(b)(2) requirements are satisfied. ............................................15

        1.   Class actions were created for civil rights cases...............................15

        2.   The Injunctive Relief Class seeks relief appropriate to the class as a whole...................................................................................................16

    1.   The Rule 23(b)(3) requirements are satisfied. ............................................18

        1.   Rule 23(b)(3) – Predominance .........................................................19

        2.   Rule 23(b)(3) – Superiority ..............................................................23

IV.    CONCLUSION...................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aichele v. City of Los Angeles*,
   314 F.R.D 478 (C.D. Cal. 2013) ...................................................................4, 18, 19, 22

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ...........................................................................................24

*Armstrong v. Davis*,
   275 F.3d 849 (9th Cir. 2001) ...........................................................................8, 12

*Astorga v. Cnty. of Los Angeles*,
   No. 2:20-CV-09805-AB, 2021 WL 5986912 (C.D. Cal. Oct. 21, 2021) ..................... 13

*Augustin v. Jablonsky*,
   819 F. Supp. 2d 153 (E.D.N.Y. 2011) ................................................................. 22

*Barnes v. District of Columbia*,
   278 F.R.D. 14 (D.D.C. 2011) ........................................................................... 22

*Bateman v. Am. Multi-Cinema, Inc.*,
   623 F.3d 708 (9th Cir. 2010) ........................................................................... 23

*Bell v. Little Axe Indep. Sch. Dist. No. 70 of Cleveland Cnty.*,
   766 F.2d 1391 (10th Cir. 1985) ....................................................................... 22

*Betances v. Fischer*,
   304 F.R.D. 416 (S.D.N.Y. 2015) ..................................................................... 22

*Black Lives Matter L.A. v. City of Los Angeles*,
   No. 2:20-cv-05027-CBM-(ASx), 2022 WL 16888576 (C.D. Cal. Oct. 3,
   2022) .......................................................................................................4, 5, 18, 19

*Briseno v. ConAgra Foods, Inc.*,
   844 F.3d 1121 (9th Cir. 2017) ............................................................................6

*Brown v. City of Detroit*,
   No. 10-12162, 2012 WL 4470433 (E.D. Mich. Sept. 27, 2012) ................................. 12

*C Dougherty v. City of Covina*,
   654 F.3d 892 (9th Cir. 2011) ........................................................................... 10

*Carnegie v. Household Int'l, Inc.*,
   376 F.3d 656 (7th Cir. 2004) ................................................................25

*Chang v. United States*,
   217 F.R.D. 262 (D.D.C. 2003) ...........................................................4, 18

*Charlebois v. Angels Baseball, LP*,
   No. SACV 10-0853 ...............................................................................10

*Chavez v. Blue Sky Nat. Beverage Co.*,
   268 F.R.D. 365 (N.D. Cal. 2010) .........................................................22

*Chua v. City of Los Angeles*,
   2017 WL 10776036 (C.D. Cal. May 25, 2017).............................4, 14, 19

*Chua v. City of Los Angeles*,
   No. LA CV16-00237 ...............................................................................4

*City of St. Louis v. Praprotnik*,
   485 U.S. 112 (1988) (plurality opinion).................................................11

*Cole v. Asurion Corp.*,
   267 F.R.D. 322 (C.D. Cal. 2010) ..........................................................14

*Coley v. Clinton*,
   635 F.2d 1364 (8th Cir. 1980) ..........................................................16, 17

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013) ................................................................................21

*Dellums v. Powell*,
   566 F.2d 167 (D.C. Cir. 1977) ..............................................................23

*E. Tex. Motor Freight Sys. Inc. v. Rodriguez*,
   431 U.S. 395 (1977) ..............................................................................16

*Elliott v. Weinberger*,
   564 F.2d 1219 (9th Cir. 1977) ...............................................................15

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) ..................................................................3

*Esplin v. Hirschi*,
   402 F.2d 94 (10th Cir. 1968) ..................................................................3

iii

*Forcellati v. Hyland's, Inc.*,
   No. CV 12-1983-GHK, 2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) ........................ 12

*Forrand v. Fed. Exp. Corp.*,
   No. CV 08-1360 DSF, 2013 WL 1793951 (C.D. Cal. Apr. 25, 2013) ........................ 22

*Fuller v. City of Oakland*,
   47 F.3d 1522 (9th Cir. 1995) ........................................................................................ 11

*Gen. Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982) ...................................................................................................... 13

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .................................................................... 8, 13, 18, 20

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) ......................................................................................... 3

*Henry v. Cnty. of Shasta*,
   132 F.3d 512 (9th Cir. 1997) .................................................................................... 9, 11

*Hessel v. O'Hearn*,
   977 F.2d 299 (7th Cir. 1992) ........................................................................................ 22

*Hickey v. City of Seattle*,
   236 F.R.D. 659 (W.D. Wash. 2006) .......................................................................... 4, 19

*Hunter v. Cnty. of Sacramento*,
   652 F.3d 1225 (9th Cir. 2011) ...................................................................................... 11

*In re Coordinated Pretrial Proc. in Petroleum Prods. Antitrust Litig.*,
   691 F.2d 1335 (9th Cir. 1982) ........................................................................................ 3

*In re First All. Mortg. Co.*,
   471 F.3d 977 (9th Cir. 2006) ................................................................................ 2, 8, 14

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
   55 F.3d 768 (3rd Cir. 1995) ........................................................................................... 14

*In re Hyundai & Kia Fuel Econ. Litig.*,
   881 F.3d 679 (9th Cir. 2018) .......................................................................................... 2

*In re Lidoderm Antitrust Litig.*,
   No. 14-MD-02521-WHO, 2017 WL 679367 (N.D. Cal. Feb. 21, 2017) ........................ 7

*In re Nassau Cnty. Strip Search Cases*,
   742 F. Supp. 2d 304 (E.D.N.Y. 2010) ....................................................................22

*J.V. v. Pomona Unified Sch. Dist.*,
   No. LA CV15-07895 ....................................................................................................10

*Jimenez v. Allstate Ins. Co.*,
   765 F.3d 1161 (9th Cir. 2014) ..................................................................................22

*Johnson v. Gen. Motors Corp.*,
   598 F.2d 432 (5th Cir. 1979) ....................................................................................15

*Kerman v. City of New York*,
   374 F.3d 93 (2d Cir. 2004) ........................................................................................22

*Kincaid v. City of Fresno*,
   244 F.R.D. 597 (E.D. Cal. 2007) ................................................................................8

*Larez v. City of Los Angeles*,
   946 F.2d 630 (9th Cir. 1991) ................................................................................9, 11

*Levya v. Medline Indus. Inc.*,
   716 F.3d 510 (9th Cir. 2013) ....................................................................................21

*Litty v. Merrill Lynch & Co.*,
   No. CV 14-0425 PA, 2015 WL 4698475 (C.D. Cal. Apr. 27, 2015) ............................7

*Loc. Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*,
   244 F.3d 1152 (9th Cir. 2001) ..................................................................................21

*MacNamara v. City of New York*,
   275 F.R.D. 125 (S.D.N.Y. 2011) ..........................................................................4, 19

*Mazza v. Am. Honda Motor Co.*,
   254 F.R.D. 610 (C.D. Cal. 2008) ..............................................................................24

*McRorie v. Shimoda*,
   795 F.2d 780 (9th Cir. 1986) ................................................................................9, 11

*Melgar v. CSK Auto, Inc.*,
   681 F. App'x 605 (9th Cir. 2017) ............................................................................5, 6

*Moss v. U.S. Secret Service*,
   No. 1:06-cv-3045-CL, 2015 WL 5705126 (D. Or. Sept. 28, 2015) ........................4, 19

*Multi-Ethnic Immigrant Workers Organizing Network v. City of Los Angeles*,
    246 F.R.D. 621 (C.D. Cal. 2007) ...................................................................*passim*

*Nozzi v. Hous. Auth. of the City of Los Angeles*,
    No. CV 07-380 PA, 2016 WL 2647677 (C.D. Cal. May 6, 2016)...............................6

*Parra v. Bashas', Inc.*,
    536 F.3d 975 (9th Cir. 2008) ...................................................................................8

*Patrykus v. Gomilla*,
    121 F.R.D. 357 (N.D. Ill. 1988) ..........................................................................4, 18

*Puente v. City of Phoenix*,
    No. CV-18-02778-PHX-JJT, 2019 WL 4849613 (D. Ariz. Sept. 30, 2019) .....4, 18, 19

*Pulaski & Middleman, LLC v. Google, Inc.*,
    802 F.3d 979 (9th Cir. 2015) ................................................................................21

*Rannis v. Recchia*,
    380 F. App'x 646 (9th Cir. 2010)............................................................................7

*Rodriguez v. City of Los Angeles*,
    No. CV 11-01135 DMG, 2014 WL 12515334 (C.D. Cal. Nov. 21, 2014).................23

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2010) ................................................................................8

*Roy v. County. of Los Angeles*,
    No. CV 12-09012-AB, 2018 WL 3436887 (C.D. Cal. July 11, 2018)........................22

*Siebert v. Severino*,
    256 F.3d 648 (7th Cir. 2001) ................................................................................22

*Spalding v. City of Oakland*,
    No. C11-2867 TEH, 2012 WL 994644 (N.D. Cal. Mar. 23, 2012) ......................4, 19

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ...........................................................................12, 13

*Stinson v. City of New York*,
    282 F.R.D. 360 (S.D.N.Y. 2012)............................................................................25

*Torres v. Mercer Canyons Inc.*,
    835 F.3d 1125 (9th Cir. 2016) ..............................................................................20

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442 (2016) ...................................................................................8, 19

*United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv.*
   *Workers Intern. Union, AFL-CIO, CLC v. ConocoPhillips Co.*,
   593 F.3d 802 (9th Cir. 2010) ................................................................20

*Vaquero v. Ashley Furniture Indus., Inc.*,
   824 F.3d 1150 (9th Cir. 2016) ..............................................................21

*Vodak v. City of Chicago*,
   No. 03 C 2463, 2006 WL 1037151 (N.D. Ill. Apr. 17, 2006) ...................5, 18

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) .............................................................................8, 17

*Walje v. City of Winchester*,
   773 F.2d 729 (6th Cir. 1985) ................................................................22

*Walters v. Reno*,
   145 F.3d 1032 (9th Cir. 1998) .........................................................16, 17

*Williams v. Brown*,
   214 F.R.D. 484 (N.D. Ill. 2003) ............................................................4

*Wolin v. Jaguar Land Rover N. Am., LLC*,
   617 F.3d 1168 (9th Cir. 2010) ........................................................12, 24

*Yaffe v. Powers*,
   454 F.2d 1362 (1st Cir. 1972) ...............................................................6

*Yokoyama v. Midland Nat'l Life Ins. Co.*,
   594 F.3d 1087 (9th Cir. 2010) ..............................................................22

*Zinser v. Accufix Rsch. Inst., Inc.*,
   253 F.3d 1180 (9th Cir. 2001) ..............................................................23

**Statutes**

42 U.S.C. § 1983 ....................................................................................2, 12

Cal. Civil Code § 52(a) ..............................................................................23

Civil Code § 52.1 ......................................................................................23

NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION
CASE NO. 4:21-CV-01705-PJH

1

**Rules**

*Rule 23(a)(1)* ...............................................................................6, 7, 19

*Rule 23(a)(2)* ...........................................................................6, 7, 8, 18

*Rule 23(a)(3)* ...................................................................................7, 12

*Rule 23(a)(4)* ...................................................................................7, 13

Rule 23(a) ...............................................................................................5

Rule 23(b) ...............................................................................................2

Rule 23(b)(2) ...................................................................................*passim*

Rule 23(b)(3) ...................................................................................*passim*

**Other Authorities**

5 Moore's Federal Practice § 23.43(1)(a) ........................................16

*Newberg on Class Actions* (4th ed. 2002), § 3.5 ...............................7

*Newberg on Class Actions* (4th ed. 2002) § 25:25 ...........................16

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

> *On May 25, 2020, George Floyd was killed by a Minneapolis police officer while being arrested. Bystanders on the sidewalk recorded videos of a police officer kneeling on Floyd's neck for several minutes while Floyd begged for his life. A video showing the last minutes of Floyd's life was circulated nationwide, and it ignited protests across the country in support of the Black Lives Matter movement.*
> *—Index Newspapers LLC v. U.S. Marshals Service[1]*

## I.   INTRODUCTION

This case is about the San Jose Police Department's use of indiscriminate and excessive force against people protesting police brutality.

In late May 2020, George Floyd was murdered by then-Minneapolis police officer Derek Chauvin. This sparked protests against police violence and in support of Black lives across the nation. In San Jose, hundreds of ordinary residents took to the streets on May 29 and 30, 2022 to protest police violence and systemic racism. Although most of the San Jose protesters were peaceful, the San Jose Police Department's coordinated response was to use indiscriminate and excessive force on the crowd. The police shot hundreds of rounds of highly dangerous Projectile Impact Weapons and struck people with batons and hands. This indiscriminate force caused physical harm and stopped and chilled individuals from exercising their First Amendment rights to assemble and express dissent.

This involved more than isolated incidents: the San Jose Police Department's response was all according to official policy. The City coordinated the officers and dispatched them to quell the protests. The City armed them with Projectile Impact Weapons and authorized them to use indiscriminate force to move the crowd, with no regard for who they hit. Defendants have been unable to account for their hundreds of shots, identify the

---

[1] 977 F.3d 817, 821 (9th Cir. 2020).

NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION
CASE NO. 4:21-CV-01705-PJH

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

officers, or provide any alleged justification for the use of force on the peaceful protestors and bystanders at issue. And not one officer was disciplined for use of force at the May 29–30 protests or for their failure to report or explain their use of force.

The plaintiffs in this civil rights case present federal claims under 42 U.S.C. § 1983 and supplemental state law claims seeking declaratory, equitable, injunctive, and monetary relief. Plaintiffs now request the Court certify an injunctive relief class under Rule 23(b)(2) and a damages class under Rule 23(b)(3). The facts and supporting evidence are set out in greater detail in the accompanying declaration of Rachel Lederman and exhibits thereto, and the declarations of the class representatives.

## II.   LEGAL STANDARD

Class certification is a two-step inquiry.

*First*, the plaintiff must satisfy the four requirements of Rule 23(a). This requires showing "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." *In re Hyundai & Kia Fuel Econ. Litig.*, 881 F.3d 679, 690 (9th Cir. 2018) (internal quotation marks omitted).

*Second*, "the plaintiff must establish that the class meets the prerequisites of at least one of the three types of class actions set forth in Rule 23(b)." *Hyundai*, 881 F.3d at 690. Under 23(b)(2), certification is appropriate when a defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief . . . is appropriate

respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2). And under Rule 23(b)(3), the court should certify a damages class if it finds "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

When considering a motion for class certification, the court takes the substantive allegations of the complaint as true. *In re Coordinated Pretrial Proc. in Petroleum Prods. Antitrust Litig.*, 691 F.2d 1335, 1342 (9th Cir. 1982). While the Court should conduct a "rigorous" analysis into the "Rule 23(a) factors," this does not include "an in-depth examination of the underlying merits" of the case. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 n.8 (9th Cir. 2011). Rather, this examination should extend only into determining "whether common questions exist; not to determine whether class members could actually prevail on the merits of their claims." *Id.*; *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992).

In a close case, a court should err on the side of certifying the class because a class can always be decertified later. *See Esplin v. Hirschi*, 402 F.2d 94, 99 (10th Cir. 1968) ("[I]f there is to be an error made, let it be in favor and not against the maintenance of the class action, for it is always subject to modification should later developments during the course of the trial so require.").

## III.   ARGUMENT

Courts in this Circuit and others routinely certify injunctive relief and damages classes under Rules 23(b)(2) and (b)(3) in similar cases where the police employ excessive

NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION
CASE NO. 4:21-CV-01705-PJH

force or otherwise violate the constitutional rights of protestors. *See, e.g.*, *Black Lives Matter L.A. v. City of Los Angeles*, No. 2:20-cv-05027-CBM-(ASx), 2022 WL 16888576 (C.D. Cal. Oct. 3, 2022) (protest case certifying (b)(2) injunctive relief class and (b)(3) excessive force class); *Spalding v. City of Oakland*, No. C11-2867 TEH, 2012 WL 994644 (N.D. Cal. Mar. 23, 2012) (protest case certifying (b)(3) arrest class); *Aichele v. City of Los Angeles*, 314 F.R.D 478 (C.D. Cal. 2013) (protest case certifying (b)(2) injunctive relief class and (b)(3) arrest class); *Multi-Ethnic Immigrant Workers Organizing Network v. City of Los Angeles*, 246 F.R.D. 621 (C.D. Cal. 2007) (protest case certifying (b)(2) injunctive relief class and (b)(3) excessive force class); *Chua v. City of Los Angeles*, No. LA CV16-00237 JAK (GJSx), 2017 WL 10776036 (C.D. Cal. May 25, 2017) (protest case certifying (b)(3) arrest class); *Hickey v. City of Seattle*, 236 F.R.D. 659 (W.D. Wash. 2006) (protest case certifying (b)(3) arrest class); *Puente v. City of Phoenix*, No. CV-18-02778-PHX-JJT, 2019 WL 4849613 (D. Ariz. Sept. 30, 2019) (protest case certifying (b)(2) injunctive relief class and (b)(3) excessive force class); *Moss v. U.S. Secret Service*, No. 1:06-cv-3045-CL, 2015 WL 5705126 (D. Or. Sept. 28, 2015) (protest case certifying (b)(3) arrest class); *MacNamara v. City of New York*, 275 F.R.D. 125 (S.D.N.Y. 2011) (protest case certifying (b)(3) arrest classes); *Chang v. United States*, 217 F.R.D. 262 (D.D.C. 2003) (protest case certifying (b)(2) injunctive relief class); *Williams v. Brown*, 214 F.R.D. 484 (N.D. Ill. 2003) (certifying (b)(3) arrest class); *Patrykus v. Gomilla*, 121 F.R.D. 357 (N.D. Ill. 1988) (certifying (b)(2) and (b)(3) excessive force and arrest class); *Vodak v. City of Chicago*, No. 03 C 2463, 2006 WL 1037151 (N.D. Ill. Apr. 17, 2006) (protest case certifying (b)(2) and (b)(3) arrest class).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

A recent case from the Central District of California—*Black Lives Matter Los Angeles v. City of Los Angeles*, No. 2:20-cv-05027-CBM-(ASx), 2022 WL 16888576 (C.D. Cal. Oct. 3, 2022)—illustrates why civil rights protest cases are routinely certified under Rule 23(b)(2) and (b)(3). The *Black Lives Matter Los Angeles* case is virtually identical to this case. The Court certified an injunctive relief class under Rule 23(b)(2) and an excessive force damages class under Rule 23(b)(3) based on the Los Angeles Police Department's use of indiscriminate force against protestors in the wake of the murder of George Floyd. The *Black Lives Matter Los Angeles* case involved, just as here, common questions about a police department's policy and practice, particularly its ratification of officers' use of force and subsequent failure to discipline the officers for any misconduct. 2022 WL 16888576, at *4.

Just as in *Black Lives Matter Los Angeles*, each requirement under Rule 23(a), (b)(2), and (b)(3) is satisfied here. Therefore, the Injunctive Relief Class should be certified under Rule 23(b)(2) and the Damages Class should be certified under Rule 23(b)(3).

## A.     The class is adequately defined.

The class definitions each meet the definiteness requirements of Rule 23, which requires that the class be objectively defined and defined without regard to the merits of the claim or the seeking of particular relief. *Melgar v. CSK Auto, Inc.*, 681 F. App'x 605, 607 (9th Cir. 2017). Unlike some circuits, the Ninth Circuit has no separate "administrative feasibility" requirement, and self-identification of class membership is proper. *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1125–33 (9th Cir. 2017); *Melgar*, 681 F. App'x at

5

607 (noting that *Briseno* "foreclos[es]" the argument that "a self-identifying class" is improper).

The fact that the (b)(2) injunctive relief class includes members who "in the future may" be affected is proper in a class seeking injunctive relief. *See, e.g.*, *Yaffe v. Powers*, 454 F.2d 1362, 1364 (1st Cir. 1972) (certifying class that included "all other individuals who wish to . . . engage . . . in peaceful political discussion . . . without surveillance . . . by defendants"); *Probe v. State Tchrs.' Ret. Sys.*, 780 F.2d 776, 780 (9th Cir. 1986) (certifying class including those who "are or will be employed" and holding inclusion of "future members does not render the class definition so vague as to preclude certification"); *Nozzi v. Hous. Auth. of the City of Los Angeles*, No. CV 07-380 PA (FFMx), 2016 WL 2647677, at *3 (C.D. Cal. May 6, 2016) (similar).

If the Court believes either of the classes should not be certified as defined, but could be certified with modifications, the Court "should alter the class definition in lieu of rejecting class certification, if possible." 3 Newberg on Class Actions §7:27 (5th ed.) (compiling cases).

**B.    Plaintiffs meet each of the requirements of Rule 23(a).**

All class actions in federal court must first meet the four requirements of Rule 23(a):

- *Numerosity (Rule 23(a)(1))*: The class must be so numerous that joinder of all class members individually is "impracticable."

- *Commonality (Rule 23(a)(2))*: There must be questions of law or fact common to the class.

- *Typicality (Rule 23(a)(3))*: The claims and defenses of the class representatives must be typical of the claims or defenses of the class.

- *Adequacy (Rule 23(a)(4))*: The class representatives must be able to fairly and adequately protect the interests of the class.

Each of these requirements is satisfied here.

### 1.   Rule 23(a)(1) – Numerosity

Rule 23(a)(1) requires the class be "so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1). "[W]here a class is large in numbers, joinder will usually be impracticable." *In re Lidoderm Antitrust Litig.*, No. 14-MD-02521-WHO, 2017 WL 679367, at *13 (N.D. Cal. Feb. 21, 2017) (quoting *Jordan v. Los Angeles County*, 669 F.2d 1311, 1319 (9th Cir. 1982)). "[N]umerosity is presumed where the plaintiff class contains forty or more members." *Litty v. Merrill Lynch & Co.*, No. CV 14-0425 PA (PJWx), 2015 WL 4698475, at *3 (C.D. Cal. Apr. 27, 2015); *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010); *Newberg on Class Actions* (4th ed. 2002), § 3.5 ("[I]n light of prevailing precedent, the difficulty inherent in joining as few as 40 class members should raise a presumption that joinder is impracticable."). There are thousands of members of the Injunctive Relief Class, and at least one hundred members of the Damages Class. **Ex. 1,** Lederman Dec. at ¶¶ 11–12. For each of the harmed protestors to be required to bring a separate suit would waste court resources and undermine justice.

### 2.   Rules 23(a)(2) – Commonality

Commonality is met when plaintiffs' claims "depend on a common contention" that is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). A "common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or

NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION
CASE NO. 4:21-CV-01705-PJH

1
2

the issue is susceptible to generalized, class-wide proof.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting *Newberg* § 4:50, at 196–97).

3
4
5
6
7
8
9
10
11
12
13
14

The Ninth Circuit construes the commonality requirement permissively. *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir. 1998). Commonality does "not require complete congruence." *In re First All. Mortg. Co.*, 471 F.3d 977, 990 (9th Cir. 2006). It is thus not necessary that '[a]ll questions of fact and law . . . be common to satisfy the rule.'" *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010) (quoting *Hanlon*, 150 F.3d at 1019). Rule 23(a)(2), in fact, only requires that there be a *single* issue of law or fact common to the class. *Rodriguez*, 591 F.3d at 1122; *Kincaid v. City of Fresno*, 244 F.R.D. 597, 602 (E.D. Cal. 2007). Thus, even "[w]here the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists." *Parra v. Bashas', Inc.*, 536 F.3d 975, 978–79 (9th Cir. 2008).

15
16
17
18
19
20
21

"In civil rights cases, commonality exists where the action challenges a "system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001). "In such circumstance, individual factual differences among the individual litigants or groups of litigants will not preclude a finding of commonality." *Id*.

22
23
24
25
26
27

The commonality requirement is satisfied here because Plaintiffs' claims present common questions of law and fact regarding the City's customs and policies related to policing public protests. A significant part of the City's pattern, practice, and custom is the use of unconstitutional force against civil rights protestors, including the use of a variety of harmful munitions, batons, and other force. Police indiscriminately fired Project Impact

28

8

1   Weapons into large crowds and beat unarmed protestors. There is no City policy against
2   these unconstitutional acts, and in fact, the San Jose Police Department purchases the
3   weapons, supplies them to officers, arms them as they go out to police protests, and has not
4   disciplined any of the offending officers or condemned any of their unconstitutional actions.
5   There is no training not to use unconstitutional force, or discipline for officers who do violate
6   the constitution, because this pattern, practice, and custom is encouraged and condoned. The
7   commonality among class members is clear, because there are multiple central issues that
8   rely on common, classwide proof. The common issues include:

9   **1) Did the San Jose Police Department have an unconstitutional custom and
10  practice of using indiscriminate and other excessive force against peaceful protestors,
11  as evidenced during the Floyd protests?** The widespread occurrence over two days of
12  demonstrations of indiscriminate, excessive force, is substantial evidence of an
13  unconstitutional custom and practice. *See, e.g.*, *McRorie v. Shimoda*, 795 F.2d 780, 784 (9th
14  Cir. 1986) (repeated violation by several officers on single day sufficient to establish policy
15  and custom); *Henry v. Cnty. of Shasta*, 132 F.3d 512, 519 (9th Cir. 1997); *Larez v. City of
16  Los Angeles*, 946 F.2d 630, 645 (9th Cir. 1991). Moreover, command decisions regarding
17  the use of force support such a classwide practice. *See, e.g.*, *Multi-Ethnic Immigrant
18  Workers Org. Network*, 246 F.R.D. at 634 (excessive force class of protestors based on "the
19  command decisions to disperse the crowd and to authorize the use of less-lethal munitions
20  if the crowd's behavior warranted it"). On the nights of the George Floyd protests, the
21  Assistant Police Chief authorized the continual use of force against crowds of protestors.
22  **Ex. 1,** Lederman Dec. at ¶ 20.

9

**2) Was there a failure to train the City's employees in the proper use of force, and a failure to adequately supervise their use of force?** "Failure to train may amount to a policy of 'deliberate indifference,' if the need to train was obvious and the failure to do so made a violation of constitutional rights likely." *C Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011). "Similarly, a failure to supervise that is 'sufficiently inadequate' may amount to 'deliberate indifference.'" *Id.*

Courts routinely certify classes based on claims alleging that a lack of training resulted in injury. *See, e.g.*, *J.V. v. Pomona Unified Sch. Dist.*, No. LA CV15-07895 JAK (MRWx), 2016 WL 11746873, at *8–9 (C.D. Cal. Oct. 27, 2016) (certifying class and finding commonality based on failure to train because plaintiffs challenged "system-wide policies and procedures that allegedly expose[d] all putative class members to a risk of harm" and plaintiffs' "gravamen [was] what happens in response"); *Charlebois v. Angels Baseball, LP*, No. SACV 10-0853 DOC (ANx), 2011 WL 2610122, (C.D. Cal. June 30, 2011) (certifying injunctive class based, in part, on defendants' failure to train employees). Here, the City has admitted inadequate supervision and training in both the San Jose Police Department and independent after action reports. **Ex. 1,** Lederman Dec. at ¶¶ 59–66.

**3) Were the foregoing violations authorized by City policymakers because no discipline was imposed for any of the excessive force and violations of written San Jose Police Department policies?** Notably, Chief Garcia and his successors have failed to impose discipline *on anyone* for these repeated constitutional violations even though they were fully aware of them through internal reporting, thousands of citizen complaints, and the investigations of civil rights lawsuits filed after the protests. Defendants have not made

known to officers in any general or specific terms that any of the force used at the protests violated San Jose Police Department policy. **Ex. 1,** Lederman Dec. at ¶¶ 35, 68–74.

As the Ninth Circuit has held, "evidence of inaction—specifically, failure to investigate and discipline employees in the face of widespread constitutional violations— can support an inference that an unconstitutional custom or practice has been unofficially adopted by a municipality." *Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1234 n.8 (9th Cir. 2011); *see also, e.g.*, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (plurality opinion); *Larez*, 946 F.2d at 645–48; *Henry*, 132 F.3d at 519; *Fuller v. City of Oakland*, 47 F.3d 1522, 1535 (9th Cir. 1995); *McRorie*, 795 F.2d at 784; Ninth Circuit Model Civil Instruction 9.7.

This presents another liability issue common capable of classwide resolution.

\* \* \*

 Each of these questions (and others) require common, classwide evidence that would apply to each and every one of the class members making class treatment appropriate. They are similar to other common questions identified by courts in protest cases where the class was certified. *See, e.g.*, *Multi-Ethnic Immigrant Workers Org. Network*, 246 F.R.D. at 631 ("The LAPD's command decisions to declare an unlawful assembly, disperse the crowd, and authorize the use of force constitute the 'common core of salient facts' that support commonality."). As the Ninth Circuit has long recognized, commonality is necessarily satisfied in § 1983 *Monell* cases arising from a system-wide policy or practice. *See, e.g.*, *Armstrong*, 275 F.3d at 868 (holding that in § 1983 civil rights cases, commonality is necessarily satisfied where the lawsuit "challenges a system-wide practice . . . that affects

NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION
CASE NO. 4:21-CV-01705-PJH

all of the putative class members"); *see also Brown v. City of Detroit*, No. 10-12162, 2012 WL 4470433 (E.D. Mich. Sept. 27, 2012) (observing that *Monell* cases requiring plaintiffs to prove a widespread custom and practice or policy are "particularly well-suited to class certification").

### 3.   Rule 23(a)(3) – Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class[.]" Fed. R. Civ. P. 23(a)(3). The purpose of this requirement "is to assure that the interest of the named representative aligns with the interests of the class." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (quoting *Hanon*, 976 F.2d at 508). In the Ninth Circuit, typicality is satisfied if "the unnamed class members have injuries similar to those of the named plaintiffs and . . . the injuries result from the same, injurious course of conduct." *Armstrong*, 275 F.3d at 869. "[T]he typicality inquiry . . . turns on Plaintiffs' legal theory, not the 'specific facts from which it arose.'" *Forcellati v. Hyland's, Inc.*, No. CV 12-1983-GHK, 2014 WL 1410264, at *10 (C.D. Cal. Apr. 9, 2014). "Typicality does not mean that the claims of the class representatives must be identical or substantially identical to those of absent class members." *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (cleaned up). Rather, the claims only need to be "reasonably co-extensive with those of absent class members[.]" *Hanlon*, 150 F.3d at 1020.

As with commonality, the Ninth Circuit construes the typicality requirement permissively. *Staton*, 327 F.3d at 957. In fact, the commonality and typicality factors "tend to merge," so that if one factor is met, then both factors are met for similar reasons. *See Gen.*

*Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982); *Staton*, 327 F.3d at 957; *Astorga v. Cnty. of Los Angeles*, No. 2:20-CV-09805-AB (AGRx), 2021 WL 5986912, at *5 (C.D. Cal. Oct. 21, 2021).

The Class Representative Plaintiffs' claims are typical of their respective classes. Each class representative for the Injunctive Relief Class participated in the protests, intends to do so in the future, and experienced San Jose Police Department's complained-of conduct. Each class representative for the Damages Class was harmed by the police department's indiscriminate, excessive force. *See* **Exs. 2-11**, Class Representative Declarations.

4.     Rule 23(a)(4) – Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy is a two-part test: "(1) [D]o the [representative] plaintiffs and their counsel have any conflicts of interest with other class members[,] and (2) will the [representative] plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. Both criteria are met here.

   *a.   The class representatives' interests are not antagonistic to the interests of the class.*

*First,* the interests of the class representatives and class members are aligned and there are no conflicts of interest. Defendants subjected the named plaintiffs to the same unlawful conduct as the class members.

*Second*, Plaintiffs have played an active role in this litigation and they are prepared to continue to litigate this case after a ruling on certification by testifying at trial. Plaintiffs have demonstrated their commitment to vigorously pursuing this action for the classes

through their participation in preparing documents, staying abreast of developments in this case, responding to discovery requests, and sitting for depositions. *See Cole v. Asurion Corp.*, 267 F.R.D. 322, 327–28 (C.D. Cal. 2010). Each Class Representative Plaintiff meets each aspect of the class definition for which they are designated, is unaware of any conflicts of interest, and understands and will execute all their class representative responsibilities. *See* **Exs. 2-11**, Class Representative Declarations.

> *b.  Class counsel are well qualified to represent the class.*

When determining whether Class Counsel is adequate, "a court may examine the attorneys' professional qualifications, skill, experience, and resources." *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 801 (3rd Cir. 1995). Submissions by counsel reflecting their experience in handling civil rights class actions involving protestors is sufficient to satisfy this requirement. *See Chua*, 2017 WL 10776036, at *8 (finding the adequacy requirement met when counsel "submitted evidence reflecting their substantial experience in handling civil rights class actions, including those involving the mass arrest of protestors."); *see also Multi-Ethnic Immigrant Workers Org. Network*, 246 F.R.D. at 632 (concluding declarations by named plaintiffs and counsel satisfied both requirements).

Plaintiffs' counsel are experienced class action, complex litigation, and civil rights practitioners who are well qualified to represent the class. *See* **Exs. 1, 12–14**, Class Counsel Declarations. Plaintiffs' counsel have the experience and resources necessary to vigorously litigate this action, are committed to pursuing this action on behalf of the class members' best interests, and have no conflicts of interest. Counsel have spent hundreds of hours

investigating the facts of this case, identifying and interviewing potential class members, conducting extensive factual and legal research, propounding and pursuing discovery requests, reviewing hundreds of hours of video footage from the protests as well as other documentary evidence, drafting pleadings, and deposing San Jose police officers. *See generally id.*

\* \* \*

In sum, the four Rule 23(a) requirements are met as both classes are numerous, have commonality and typicality, and both named plaintiffs and class counsel will provide more than adequate representation.

### C.     The Rule 23(b)(2) requirements are satisfied.

#### 1.     Class actions were created for civil rights cases.

A suit to enjoin unconstitutional government conduct is "the classic type of action envisioned by the drafters of Rule 23[.]" *Elliott v. Weinberger*, 564 F.2d 1219, 1229 (9th Cir. 1977); *see also, e.g.*, *Johnson v. Gen. Motors Corp.*, 598 F.2d 432, 435 (5th Cir. 1979). In particular, Rule 23(b)(2) "was adopted in order to permit the prosecution of civil rights actions." *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998); *see also E. Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 405 (1977) (civil rights suits "are often by their very nature class suits, involving classwide wrongs"). The Advisory Committee Notes to the 1966 Amendments to the Federal Rules of Civil Procedure name civil rights cases as illustrative of the type of case for which Rule 23(b)(2) was intended. 39 F.R.D. 69, 102. The leading treatises say the same thing. *Newberg on Class Actions* (4th ed. 2002) § 25:25 ("[C]ertain types of lawsuits, such as those in the criminal justice area, are inherently class

NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION
CASE NO. 4:21-CV-01705-PJH

1

2

3

actions because individual wrongs can be righted only by institutional reforms affecting an entire class of people."); 5 Moore's Federal Practice § 23.43(1)(a), at 23–191 ("Rule 23(b)(2) was promulgated . . . essentially as a tool for facilitating civil rights actions.")

4

5

6

7

8

9

10

11

12

13

Because one purpose of enacting Rule 23(b)(2) was to enable plaintiffs to bring lawsuits vindicating civil rights, the rule "'must be read liberally in the context of civil rights suits.'" *Coley v. Clinton*, 635 F.2d 1364, 1378 (8th Cir. 1980) (quoting *Ahrens v. Thomas*, 570 F.2d 286, 288 (8th Cir. 1978)). "This principle of construction limits the district court's discretion." *Coley*, 635 F.2d at 1378. This means that in civil rights cases, "[c]ourts should guard against the temptation to assume that the certification of a 23(b)(2) class action is purely discretionary." *Id.* (quoting 3B J. Moore & J. Kennedy, Moore's Federal Practice ¶ 23.40(3) (1980)).

14

15

  2. <u>The Injunctive Relief Class seeks relief appropriate to the class as a whole.</u>

16

17

18

19

20

21

22

23

24

25

26

Rule 23(b)(2) permits the court to certify a class where the party against whom the relief is sought "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief . . . is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2). "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted— the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart*, 564 U.S. at 360 (internal quotations and citations omitted). "In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Id.*

27

28

NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION
CASE NO. 4:21-CV-01705-PJH

The burden under Rule 23(b)(2) is low. *Walters*, 145 F.3d at 1047. "Although common issues must predominate for class certification under Rule 23(b)(3), no such requirement exists under 23(b)(2)." *Id*. Rule 23(b)(2) is satisfied if "class members complain of a pattern or practice that is generally applicable to the class as a whole." *Id*. A class can still meet the requirements of Rule 23(b)(2) even if some class members suffered no injury or suffered different injuries from the challenged practice. *Id.* (citing 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1775 (2d ed. 1986)).

The San Jose Police Department has a pattern and practice of using indiscriminate force on protesters, which has had a chilling effect on First Amendment rights. The Injunctive Relief Class seeks to enjoin the indiscriminate use of impact munitions and batons on peaceful protesters. All class member protestors would benefit from this injunctive relief because it would prevent future harm and stop the chill that violence against protestors puts on protected speech.

As discussed above, courts routinely certify injunctive relief classes where the police arrest or use force against a group of demonstrators. *See, e.g.*, *Black Lives Matter L.A. v. City of Los Angeles*, 2022 WL 16888576 (C.D. Cal. Oct. 3, 2022); *Aichele v. City of Los Angeles*, 314 F.R.D 478 (C.D. Cal. 2013); *Multi-Ethnic Immigrant Workers Organizing Network v. City of Los Angeles*, 246 F.R.D. 621, 632 (C.D. Cal. 2007); *Puente v. City of Phoenix*, 2019 WL 4849613 (D. Ariz. Sept. 30, 2019); *Chang v. United States*, 217 F.R.D. 262 (D.D.C. 2003); *Patrykus v. Gomilla*, 121 F.R.D. 357 (N.D. Ill. 1988); *Vodak v. City of Chicago*, 2006 WL 1037151 (N.D. Ill. Apr. 17, 2006).

1

Plaintiffs clearly meet the requirements specific to a 23(b)(2) class.

2

**1.      The Rule 23(b)(3) requirements are satisfied.**

3

Rule 23(b)(3) authorizes class certification when "questions of law or fact common

4

5

to class members predominate over any questions affecting only individual members" and

6

"a class action is superior to other available methods for fairly and efficiently adjudicating

7

the controversy." Fed. R. Civ. P. 23(b)(3). Because common questions of law and fact lie at

8

the core of this case, Rule 23(a)(2) is satisfied as discussed above, *see* § IV(B)(2), triggering

9

10

the (b)(3) predominance analysis. *Hanlon*, 150 F.3d at 1022 ("In contrast to Rule 23(a)(2),

11

Rule 23(b)(3) focuses on the relationship between the common and individual issues."). The

12

Rule 23(b)(3) analysis looks at whether these common questions predominate over

13

individual ones and whether a class action is the superior way to resolve the dispute. Both

14

requirements are satisfied here for the Damages Class.

15

As discussed above, courts routinely certify damages classes where the police use

16

17

force or otherwise violate constitutional rights of a group of peaceful protestors. *See, e.g.,*

18

*Black Lives Matter L.A. v. City of Los Angeles*, 2022 WL 16888576 (C.D. Cal. Oct. 3, 2022);

19

*Spalding v. City of Oakland*, 2012 WL 994644 (N.D. Cal. Mar. 23, 2012); *Aichele v. City of*

20

*Los Angeles*, 314 F.R.D 478 (C.D. Cal. 2013); *Multi-Ethnic Immigrant Workers Organizing*

21

*Network v. City of Los Angeles*, 246 F.R.D. 621 (C.D. Cal. 2007); *Chua v. City of Los*

22

*Angeles*, 2017 WL 10776036 (C.D. Cal. May 25, 2017); *Hickey v. City of Seattle*, 236 F.R.D.

23

24

659 (W.D. Wash. 2006); *Puente v. City of Phoenix*, 2019 WL 4849613 (D. Ariz. Sept. 30,

25

2019); *Moss v. U.S. Secret Service*, 2015 WL 5705126 (D. Or. Sept. 28, 2015); *MacNamara*

26

*v. City of New York*, 275 F.R.D. 125 (S.D.N.Y. 2011). .

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 1.   Rule 23(b)(3) – Predominance

Rule 23(b)(3) predominance adds a layer to Rule 23(a) commonality. A "common question [under Rule 23(a)(1)] is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Tyson Foods*, 577 U.S at 453 (quoting Newberg § 4:50, at 196–97). "The predominance inquiry [under Rule 23(b)(3)] 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Id*. (quoting Newberg § 4:49, at 195–96). So long as "'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3)'" even if there are other important individualized issues like "damages or some affirmative defenses[.]'" *Id*. (quoting 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778, at 123–24 (3d ed. 2005)).

"[M]ore important questions apt to drive the resolution of the litigation are given more weight in the predominance analysis over individualized questions which are of considerably less significance to the claims of the class." *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016). If "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual

1
2

basis," and predominance is satisfied. *Hanlon*, 150 F.3d at 1022 (quoting *Federal Practice and Procedure*, § 1778).

3
4
5
6
7

Like commonality, the predominance inquiry tests only the plaintiff's theory of the case, not whether the merits of the theory are proved. *See United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Intern. Union, AFL-CIO, CLC v. ConocoPhillips Co.*, 593 F.3d 802, 808–09 (9th Cir. 2010).

8

       *a.*     *Common Questions of Law and Fact Predominate*

9
10
11
12
13
14
15
16
17

Where a common nucleus of operative facts forms the central issue in dispute, the predominance requirement is satisfied even if individualized issues of proof are present. That is, if one or more central issues are common to the class, the action is proper under 23(b)(3) even if the court will need to try other matters separately, like affirmative defenses that are particular to certain class members. *See Loc. Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) (certifying a class under Rule 23(b)(3) where the liability issues of the class were the same).

18
19
20
21
22
23
24
25
26

Defendants' pattern and practice of using indiscriminate force provides that common nucleus here. Common questions of law and fact predominate in this case because the heart of the case is the indiscriminate nature of the police use of force against protestors, shooting weapons into crowds. Every class member was harmed by the San Jose Police Department at the George Floyd protests in May 2020 as a result of the Department's use of unconstitutional force. The resolution of all the central questions about policy, practice and custom, as well as the contours of the First and Fourth Amendment, are common questions

27
28

of liability that can be resolved with common, classwide evidence. These predominating common questions are enumerated in detail in § V(B)(2).

                    *b.*       *Individual Damage Issues Do Not Defeat Predominance*

The existence of individual questions regarding the damages suffered by each class member does not defeat predominance. It is well-established Ninth Circuit law that so long as Plaintiffs' "damages stemmed from the defendant's actions that created the legal liability" the "presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)." *Levya v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) (distinguishing *Comcast Corp. v. Behrend*, 569 U.S. 27, 38 (2013)). The Ninth Circuit has repeatedly confirmed this point. *See, e.g.*, *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1154–55 (9th Cir. 2016) ("Our precedent is well settled on this point."); *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 988 (9th Cir. 2015); *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1168 (9th Cir. 2014); *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010). To satisfy Rule 23(b)(3)'s predominance requirement, Plaintiffs therefore need only present a method of calculating damages that is consistent with their theory of liability. *See Forrand v. Fed. Exp. Corp.*, No. CV 08-1360 DSF (PJWx), 2013 WL 1793951, at *3 (C.D. Cal. Apr. 25, 2013); *Chavez v. Blue Sky Nat. Beverage Co.*, 268 F.R.D. 365, 379 (N.D. Cal. 2010).

Damages are relatively uniform and readily determinable here. General or presumed damages flow from the principle that, where there is "a constitutional violation and . . . [indisputably] some injury to the plaintiff, the plaintiff is entitled to an award of compensatory damages as a matter of law." *See, e.g.*, *Kerman v. City of New York*, 374 F.3d

NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION
CASE NO. 4:21-CV-01705-PJH

93, 124 (2d Cir. 2004); *Hessel v. O'Hearn*, 977 F.2d 299, 301–02 (7th Cir. 1992); *Walje v. City of Winchester*, 773 F.2d 729, 732 (6th Cir. 1985); *Bell v. Little Axe Indep. Sch. Dist. No. 70 of Cleveland Cnty.*, 766 F.2d 1391 (10th Cir. 1985); *Siebert v. Severino*, 256 F.3d 648, 655 (7th Cir. 2001).

Plaintiffs propose general damages for those who did not require medical treatment and individualized damages for those who did. This is a common practice in civil rights cases and courts routinely certify civil rights class actions seeking such general or presumed damages. *See, e.g.*, *Betances v. Fischer*, 304 F.R.D. 416, 431 (S.D.N.Y. 2015); *In re Nassau Cnty. Strip Search Cases*, 742 F. Supp. 2d 304, 331 (E.D.N.Y. 2010); *Augustin v. Jablonsky*, 819 F. Supp. 2d 153 (E.D.N.Y. 2011); *Barnes v. District of Columbia*, 278 F.R.D. 14, 21 (D.D.C. 2011); *Roy v. County. of Los Angeles*, No. CV 12-09012-AB (FFMx), 2018 WL 3436887, at *3–4 (C.D. Cal. July 11, 2018); *Aichele*, 314 F.R.D. at 496; *Rodriguez v. City of Los Angeles*, No. CV 11-01135 DMG (JEMx), 2014 WL 12515334, at 1, 5–7 (C.D. Cal. Nov. 21, 2014); *Dellums v. Powell*, 566 F.2d 167 (D.C. Cir. 1977). Further, Civil Code § 52.1 incorporates statutory damages of at least $4000 per violation under Cal. Civil Code § 52(a). *See* Cal. Civ. Code § 52.1(c); Cal. Civ. Code § 52(a). Such damages are easily determinable and particularly well suited for class treatment. *See, e.g.*, *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708 (9th Cir. 2010) (reversing denial of class certification where district court found statutory damages provided by FACTA were disproportionate to the harm because Congress intended statutory damages to apply to each violation).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2.    <u>Rule 23(b)(3) – Superiority</u>

The last requirement under Rule 23(b)(3)—superiority—requires the plaintiff to show "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) provides four factors in addressing the superiority of a class action: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Id*. Here, all four factors favor certification.

The Ninth Circuit has recognized that "[w]here damages suffered by each putative class member are not large, th[e first superiority] factor weighs in favor of certifying a class action." *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001). This is because "[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive" for individuals to bring claims. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997). The "purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy. Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification." *Wolin*, 617 F.3d at 1175; *see also Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610, 628 (C.D. Cal. 2008) (finding "the individual class members do not have a strong

23

interest in controlling the litigation" when "the potential damages for each class member are approximately $4,000[.]").

While there are a handful of significant injuries, the class member claims here are not significant enough to justify individual litigation for the vast majority of class members. The typical class member would find it difficult (if not impossible) to retain a lawyer, because the damages are relatively small and the costs of police misconduct litigation is so high. **Ex. 1,** Lederman Decl. at ¶ 13. Few individuals have an interest in controlling the litigation (and those who do can opt out of the class). Some of the protestors who had the most significant injuries filed their own damages cases, including one case involving seven individual plaintiffs who are not seeking class status. There is no other class action that has been filed, but hundreds of putative class members have been harmed and do not have counsel or means of representation without this case. *See id.* Thus, "without class certification, it is likely that the constitutional violations [the] [p]laintiffs allege would go unadjudicated, as many of the potential class members do not possess the knowledge or resources to prosecute a lawsuit, and the relatively small amount of damages suffered by each individual plaintiff decreases the possibility of individual lawsuits being filed." *See Stinson v. City of New York*, 282 F.R.D. 360, 383 (S.D.N.Y. 2012).

Manageability is demonstrated by the fact that many similar cases have been certified. Liability can be determined readily on a classwide basis. If necessary, the court can bifurcate liability and damages, try liability, and then determine how to handle damages, including the common assessment of general and statutory damages. *See, e.g.*, *Carnegie v. Household Int'l, Inc.,* 376 F.3d 656, 661 (7th Cir. 2004) (a "global settlement . . . will be a natural and

NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION
CASE NO. 4:21-CV-01705-PJH

appropriate sequel" to a liability finding, and "Rule 23 allows . . . imaginative solutions[,]" including bifurcation, appointment of a special master, decertifying the class for subsequent proceedings, and others, to address damages.) *Id.*; *accord Multi-Ethnic Immigrant Workers Organizing Network*, 246 F.R.D. at 636.

For these reasons, a class action is far superior to pursuing the Class members' claims individually.

## IV.   CONCLUSION

The plaintiffs request the Court certify the Injunctive Relief Class under Rule 23(b)(2) and certify the Damages Class under Rule 23(b)(3).

Dated: December 16, 2022

Respectfully submitted,

*/s/ Tammy B. Webb*
Tammy B. Webb, SBN 227593

/s/ Tammy B. Webb
Tammy B. Webb, SBN 227593
Alicia J. Donahue, SBN 117412
Chris A. Johnson, SBN 183219
SHOOK, HARDY & BACON, LLP
555 Mission Street, Suite 2300
San Francisco, CA 94105
Telephone: (415) 544-1900
Facsimile: (415) 391-0281
tbwebb@shb.com
adonahue@shb.com
cjohnson@shb.com

/s/ Mitchell F. Engel
Mitchell F. Engel, *Pro Hac Vice*
SHOOK, HARDY & BACON, LLP
2555 Grand Blvd.
Kansas City, MO, 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547
mengel@shb.com

/s/ Rachel Lederman
Rachel Lederman, SBN 130192
ALEXIS C. BEACH & RACHEL
LEDERMAN, ATTORNEYS
P.O. Box 40339
San Francisco, CA 94140-0339
Telephone: (415) 282-9300
rachel@sbfla.com

/s/ Tifanei N. Ressl-Moyer
Tifanei N. Ressl-Moyer, SBN 319721
LAWYERS' COMMITTEE FOR CIVIL
RIGHTS OF THE
SAN FRANCISCO BAY AREA
131 Steuart Street #400
San Francisco, CA 94105
Telephone: (415) 814-7631
tresslmoyer@lccrsf.org

/s/ R. Michael Flynn
R. Michael Flynn, SBN 258732
FLYNN LAW OFFICE
1720 Broadway, Ste. 430
Telephone: (510) 893-3226
Facsimile: (866) 728-7879
michael@flo-law.com

/s/ James B. Chanin
James B. Chanin, SBN 76043
LAW OFFICES OF JAMES B. CHANIN
3050 Shattuck Ave.
Berkeley, CA 94705
Telephone: (510) 848-4752
Facsimile: (510) 848-5819
jbcofc@aol.com

***Counsel for Plaintiffs NAACP of San Jose/Silicon Valley, San Jose Peace and Justice Center, M. Michael Acosta, Joseph Canas, Leslie Vasquez, Peter Allen, Shaunn Cartwright, Yessica Riles, Jose Gustavo Flores Rodriguez, Alex Lee, Joseph Maldonado, Cindy Cuellar, Mahmoudreza Naemeh, and Megan Swift***

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **CERTIFICATE OF SERVICE**

I certify the foregoing was served via operation of this Court's electronic case notification system on December 16, 2022.

*/s/ Tammy B. Webb*
*Counsel for Plaintiffs*