UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NAACP OF SAN JOSE/ SILICON
VALLEY, et al.,

        Plaintiffs,

    v.

CITY OF SAN JOSE, et al.,

        Defendants.

Case No. 21-cv-01705-PJH

**ORDER RE CLASS CERTIFICATION, DISCOVERY, AND SEALING**

Re: Dkt. No. 87, 101, 102

       Plaintiffs' motion for class certification came on for hearing on February 23, 2023. Plaintiffs appeared through their counsel, Mitchell Engel, Rachel Lederman, and Tammy Webb. Defendants appeared through their counsel, Matthew Pritchard. Also before the court are the parties' discovery letter brief and plaintiffs' motion to seal. Having read the papers filed by the parties and carefully considered their arguments and relevant authority, and good cause appearing, the court hereby rules as follows.

## BACKGROUND

       This is a civil rights case arising out of the May 2020 protests in response to the killing of George Floyd by police. Specifically, on May 29 and 30, 2020, plaintiffs participated in protests in San Jose to "express their view that police brutality and institutionalized racism must end," and now "seek redress for the violation of their constitutional rights to assemble, protest, and be free from racial discrimination, disability discrimination, excessive force, and wrongful arrest." Dkt. 108, ¶¶ 2, 3.[1]

       There are two organization plaintiffs and eleven individual plaintiffs in this case.

---

[1] At the time that the class certification motion was filed, plaintiffs had been granted leave to file an amended complaint to substitute Doe defendants. See Dkt. 81. Plaintiffs filed a proposed amended complaint, which was ultimately filed as the operative complaint. See Dkt. 94, 108. This order will cite to the currently-operative version of the complaint.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    The organization plaintiffs are (1) the National Association for the Advancement of

2    Colored People of San Jose/Silicon Valley, and (2) the San Jose Peace and Justice

3    Center.  Dkt. 108, ¶¶ 14-15.  There are eleven individual plaintiffs, not all of whom are

4    proposed class representatives.  For purposes of this section, only the proposed class

5    representatives will be discussed.

6         The first proposed class representative is Joseph Cañas.  Dkt. 108, ¶ 20.  Cañas

7    was at the protest on May 29, 2020, playing a guitar, when he was shot in the eye by an

8    impact munition (also referred to as "projectile impact weapon," or "PIW").  Id.

9         The second proposed class representative is Leslie Vasquez.  Dkt. 108, ¶ 21.

10   Vasquez attended the May 29, 2020 protest and was shot in the groin, thighs, and genital

11   area, and bludgeoned in the stomach with a baton as she stood with her hands up.  Id.

12        The third proposed class representative is Peter Allen.  Dkt. 108, ¶ 22.  Allen

13   attended the protest on May 29, 2020, and was pushed to the ground and repeatedly

14   shot with impact munitions.  Id.  Allen alleges that he was backing away when he was

15   shoved to the ground by an officer with his baton, then shoved to the ground again when

16   he tried to get up and back away.  Id., ¶ 111.  Allen alleges that he was again attempting

17   to retreat when he was shot in the thigh and in the chest with PIW.  Id., ¶ 112-113.

18        The fourth proposed class representative is Shaunn Cartwright.  Dkt. 108, ¶ 23.

19   Cartwright was shot in the knee, calf, and finger with PIW on May 30, 2020.  Id.

20        The fifth proposed class representative is Yessica Riles.  Dkt. 108, ¶ 24.  On May

21   29, Riles was shot with PIW in the abdomen while her hands were up in a 'don't shoot'

22   gesture.  Id., ¶ 78.

23        The sixth proposed class representative is Gustavo Flores.  Dkt. 108, ¶ 25.  Flores

24   was present at the May 29, 2020 protest, and "tried to warn the other demonstrators,

25   walking down the front line of demonstrators suggesting that they put their hands up in a

26   gesture of 'don't shoot' to show they were unarmed [and] did not pose a threat."  Id., ¶ 82.

27   While Flores was doing so,  a San Jose police officer "shot him in the groin and testicle

28   with an impact munition."  Id.  Flores fell to the ground, and as he got up, he saw the

2

1   officer reloading his gun.  Id., ¶ 83.  As Flores was trying to walk away, someone warned

2   that the officer was aiming at him again, and when Flores turned to look, the officer shot

3   him in his left collarbone with another impact munition.  Id.

4        The seventh proposed class representative is Cindy Cuellar.  Dkt. 108, ¶ 28.

5   Cuellar attended the May 29, 2020 protest and saw officers "shoot impact munitions into

6   the crowd," hitting a friend of hers who is a journalist.  Id., ¶ 71.  When Cuellar went to

7   her friend's aid, an officer shot her in her left calf.  Id.

8        There are four other plaintiffs who are proceeding only as individuals, not as class

9   representatives: Michael Acosta, Joseph Maldonado, Mahmoudreza Naemeh, and

10  Megan Swift.

11       The defendants are as follows: the City of San Jose, David Sykes (city manager of

12  San Jose), Edgardo Garcia (police chief of the SJPD), Christopher Knopf (SJPD

13  assistant chief of police), Jason Dwyer (SJPD caption and the 'special operations

14  commander' during the May 2020 protests), Brian Matchett (SJPD lieutenant), Steve

15  Lagorio (SJPD lieutenant), Ronnie Lopez (SJPD sergeant), Lee Tassio (SJPD sergeant),

16  Jaren Yuen (SJPD officer), Bill Nguyen (SJPD officer), Clifford Grodin (SJPD officer),

17  Stephen Michael Curry (SJPD officer), Michael Simonini (SJPD officer), Victor Ayala

18  (SJPD officer), James Adgar (SJPD officer), Steve Gaona (SJPD officer), Tyler Moran

19  (SJPD officer), John Lynch (SJPD sergeant), Larry Situ (SJPD officer), Frank Orabuena

20  (SJPD officer), Gerardo Silva (SJPD officer), and Chris Weber (SJPD officer).  Dkt. 108,

21  ¶¶ 27-47.

22       The complaint purports to assert eleven causes of action, though the first is for

23  "injunctive relief" and the second is for "declaratory relief," which are types of remedies

24  rather than standalone causes of action.  That leaves nine substantive causes of action:

25       (1) violation of First Amendment rights under section 1983, asserted by all

26  plaintiffs against all defendants;

27       (2) excessive force in violation of Fourth and Fourteenth Amendments, under

28  section 1983, asserted by all plaintiffs against defendants City of San Jose, Garcia,

3

United States District Court
Northern District of California

Knopf, Dwyer, Matchett, and Tassio; and further asserted by plaintiff Acosta against defendants Yuen, Nguyen, Grodin, Lopez, and Lynch; by plaintiff Naemeh against defendants Orabuena, Weber, Situ, and Lopez; by plaintiff Swift against defendants Curry, Silva, and Ayala; by plaintiff Cañas against defendants Yuen and Lopez; by plaintiff Vasquez against defendants Yuen, Simonini, and Lopez; by plaintiff Allen against defendants Yuen and Lopez; by plaintiff Riles against defendant Simonini; by plaintiff Flores against defendants Gaona and Grodin; by plaintiff Cuellar against defendants Simonini, Adgar, Nguyen, Grodin, Moran, and Lynch; and by plaintiff Maldonado against defendant Lagorio;

(3) failure to intervene under section 1983, asserted by all plaintiffs against all defendants;

(4) violation of Title II of the Americans with Disabilities Act, asserted by plaintiff Cartwright against defendant City of San Jose;

(5) violation of section 504 of the Rehabilitation Act, asserted by plaintiff Cartwright against defendant City of San Jose;[2]

(6) violation of the California Bane Act, asserted by all plaintiffs against all defendants;

(7) violation of the California Ralph Act, asserted by all plaintiffs against defendants City of San Jose, Garcia, Knopf, Dwyer, Matchett, and Tassio; and further asserted by plaintiff Acosta against defendants Yuen, Nguyen, Grodin, Lopez, and Lynch; by plaintiff Naemeh against defendants Orabuena, Weber, Situ, and Lopez; by plaintiff Swift against defendants Curry, Silva, and Ayala; by plaintiff Cañas against defendants Yuen and Lopez; by plaintiff Vasquez against defendants Yuen, Simonini, and Lopez; by plaintiff Allen against defendants Yuen and Lopez; by plaintiff Riles against defendant Simonini; by plaintiff Flores against defendants Gaona and Grodin; by plaintiff Cuellar against defendants Simonini, Adgar, Nguyen, Grodin, Moran, and Lynch; and by plaintiff

---

[2] In their reply, plaintiffs clarify that they are not seeking class certification as to "the disability discrimination claims."  Dkt. 103 at 13, n.7.

Maldonado against defendant Lagorio;

(8) assault and battery, asserted by all plaintiffs against defendants City of San Jose, Garcia, Knopf, Dwyer, Matchett, and Tassio; and further asserted by plaintiff Acosta against defendants Yuen, Nguyen, Grodin, Lopez, and Lynch; by plaintiff Naemeh against defendants Orabuena, Weber, Situ, and Lopez; by plaintiff Swift against defendants Curry, Silva, and Ayala; by plaintiff Cañas against defendants Yuen and Lopez; by plaintiff Vasquez against defendants Yuen, Simonini, and Lopez; by plaintiff Allen against defendants Yuen and Lopez; by plaintiff Riles against defendant Simonini; by plaintiff Flores against defendants Gaona and Grodin; by plaintiff Cuellar against defendants Simonini, Adgar, Nguyen, Grodin, Moran, and Lynch; and by plaintiff Maldonado against defendant Lagorio; and

(9) negligence, asserted by all plaintiffs against defendants City of San Jose, Garcia, Knopf, Dwyer, Matchett, and Tassio; and further asserted by plaintiff Acosta against defendants Yuen, Nguyen, Grodin, Lopez, and Lynch; by plaintiff Naemeh against defendants Orabuena, Weber, Situ, and Lopez; by plaintiff Swift against defendants Curry, Silva, and Ayala; by plaintiff Cañas against defendants Yuen and Lopez; by plaintiff Vasquez against defendants Yuen, Simonini, and Lopez; by plaintiff Allen against defendants Yuen and Lopez; by plaintiff Riles against defendant Simonini; by plaintiff Flores against defendants Gaona and Grodin; by plaintiff Cuellar against defendants Simonini, Adgar, Nguyen, Grodin, Moran, and Lynch; and by plaintiff Maldonado against defendant Lagorio.  See Dkt. 108, ¶¶ 206-284.

Plaintiffs now move for certification on the following proposed classes:

Damages class:  The direct force damages class is defined as all persons present at protests regarding the killing of George Floyd in the city of San Jose on May 29, 2020 or May 30, 2020 who were struck by either Projectile Impact Weapons (including 37mm and 40mm projectiles and bean-bag shotguns), batons, or otherwise physically struck by a San Jose Police Department officer.

Injunctive relief class:  The injunctive relief class is defined as all persons who have in the past participated, presently are participating, or may in the future participate in, or be present at, demonstrations within the city of San

Jose in the exercise of their rights of free speech, assembly, association, petition, and of the press, in general, and particularly as it relates to protesting police violence and discrimination against people of color.

Dkt. 108, ¶¶ 185, 186.

**DISCUSSION**

A.    Legal standard

"Before certifying a class, the trial court must conduct a 'rigorous analysis' to determine whether the party seeking certification has met the prerequisites of Rule 23." Mazza v. American Honda Motor Co., Inc., 666 F.3d 581, 588 (9th Cir. 2012) (citation and quotation omitted).

The party seeking class certification bears the burden of affirmatively demonstrating that the class meets the requirements of Federal Rule of Civil Procedure 23. Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011). In order for a class action to be certified, plaintiffs must prove that they meet the requirements of Federal Rule of Civil Procedure 23(a) and (b).

Rule 23(a) requires that plaintiffs demonstrate numerosity, commonality, typicality and adequacy of representation in order to maintain a class. First, the class must be so numerous that joinder of all members individually is "impracticable." See Fed. R. Civ. P. 23(a)(1). Second, there must be questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). Third, the claims or defenses of the class representative must be typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). And fourth, the class representative(s) must be able to protect fairly and adequately the interests of all members of the class. Fed. R. Civ. P. 23(a)(4). The parties moving for class certification bear the burden of establishing that the Rule 23(a) requirements are satisfied. Gen'l Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 156 (1982); see also Dukes, 564 U.S. at 350.

If all four prerequisites of Rule 23(a) are satisfied, the court must also determine whether to certify the class under one of the three subsections of Rule 23(b), pursuant to which the named plaintiffs must establish that either (1) that there is a risk of substantial prejudice from separate actions; or (2) that declaratory or injunctive relief benefitting the

6

class as a whole would be appropriate; or (3) that common questions of law or fact common to the class predominate and that a class action is superior to other methods available for adjudicating the controversy at issue.  See Fed. R. Civ. P. 23(b).

The court does not make a preliminary inquiry into the merits of plaintiffs' claims in determining whether to certify a class.  Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177 (1974).  The court will, however, scrutinize plaintiffs' legal causes of action to determine whether they are suitable for resolution on a class-wide basis.  See, e.g., Moore v. Hughes Helicopters, Inc., 708 F.2d 475, 480 (9th Cir. 1983).  Making such a determination will sometimes require examining issues that overlap with the merits.  See Dukes, 564 U.S. at 350-51 (acknowledging that court's "rigorous analysis" will frequently entail some overlap with merits of plaintiff's underlying claim).

The court will consider matters beyond the pleadings, if necessary, in order to ascertain whether the asserted claims or defenses are susceptible of resolution on a class wide basis.  See McCarthy v. Kleindienst, 741 F.2d 1406, 1419 n.8 (D.C. Cir. 1984).

B.      Analysis

1.      Damages class

As set forth above, in order to certify a damages class under Rule 23(b)(3), plaintiffs must show that the four Rule 23(a) requirements are met, and must also show that "common questions of law or fact common to the class predominate and that a class action is superior to other methods available for adjudicating the controversy at issue." Because, as will be set forth below, the court finds this matter can be determined on the basis of the Rule 23(b) showing alone, the court does not reach the Rule 23(a) showing.

Plaintiffs argue that their claims present "common questions of law and fact regarding the city's customs and policies related to policing public protest" that predominate over any individual issues.  Specifically, plaintiffs identify the following common questions: (1) did the SJPD have an unconstitutional custom and practice of using indiscriminate and other excessive force against peaceful protestors, as evidenced

1   during the Floyd protests, (2) was there a failure to train the city's employees in the

2   proper use of force, and a failure to adequately supervise their use of force, and (3) were

3   the foregoing violations authorized by city policymakers because no discipline was

4   imposed for any of the excessive force and violations of written SJPD policies.  Dkt. 87 at

5   20-21.

6            Plaintiffs argue that another district court, on similar facts, granted a motion for

7   class certification after finding that common issues predominated over individual ones.

8   See Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles, 246 F.R.D. 621

9   (C.D. Cal. 2007) ("MIWON").

10           The MIWON court found that the predominance requirement was indeed met as to

11   plaintiffs' Fourth Amendment excessive force claims:

12           The Court recognizes that the conduct of individual officers in the field may
             present individual issues of reasonableness, namely whether it was
13           reasonable under the circumstances for a particular officer to fire less-lethal
             munitions, use his baton to strike people, or use other forms of force, such
14           as pushing and shoving.

15           Nonetheless, the individual issues share a common source: the command
16           decisions to disperse the crowd and to authorize the use of less-lethal
             munitions if the crowd's behavior warranted it.  LAPD Report at 8, 34–35.
17           Because the legality of these command decisions is the overriding common
             question, the predominance requirement is met as to the Fourth
18           Amendment claim.

19   MIWON at 635.

20           That final sentence – the focus on the command decisions, rather than the actions

21   of individual officers – is the key to the court's conclusion on predominance.  Earlier in the

22   same section, the MIWON court emphasized that "plaintiffs focus on the LAPD

23   commanders' authorization of 'less lethal' force (as distinct from the application of such

24   force)."  Id. (emphasis in original).  Also of note is that, in MIWON, the plaintiffs filed suit

25   against only the City of Los Angeles, William Bratton (the Chief of Police), Cayler Carter

26   (Deputy Chief of Police), and Louis Gray (a LAPD commander).  Id. at 624.[3]

27

28   _____

[3] The MIWON opinion also states that Does 1 through 10 were named as defendants, but

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

In contrast, there is no such narrow focus on the command decisions in the present case.  Plaintiffs are pursuing claims against not only the defendants who made the high-level decisions to authorize force, but also the officers who applied such force. That is the key distinction between this case and MIWON.

The distinction can be most clearly seen when looking at plaintiffs' excessive force claim under section 1983.  See Dkt. 108, ¶¶ 222-226.  Plaintiffs assert the claim on behalf of all plaintiffs against defendants City of San Jose, Garcia, Knopf, Dwyer, Matchett, and Tassio, those defendants having been involved in the authorization of force, but plaintiffs also assert the excessive force claim against individual officers who were involved in the application of force.  Specifically, the excessive force claim is asserted by plaintiff Acosta against defendants Yuen, Nguyen, Grodin, Lopez, and Lynch; by plaintiff Naemeh against defendants Orabuena, Weber, Situ, and Lopez; by plaintiff Swift against defendants Curry, Silva, and Ayala; by plaintiff Cañas against defendants Yuen and Lopez; by plaintiff Vasquez against defendants Yuen, Simonini, and Lopez; by plaintiff Allen against defendants Yuen and Lopez; by plaintiff Riles against defendant Simonini; by plaintiff Flores against defendants Gaona and Grodin; by plaintiff Cuellar against defendants Simonini, Adgar, Nguyen, Grodin, Moran, and Lynch; and by plaintiff Maldonado against defendant Lagorio.  See id.  The same non-overlapping sets of plaintiffs and defendants are listed for plaintiffs' state law claims for assault and battery, negligence, and violation of the Ralph Act.  See id., ¶¶ 268-284.

Because this case involves not only common claims regarding the authorization of force, but also individual claims arising out of each individual application of force, the court finds that the reasoning of MIWON is distinguishable, and accordingly, the court concludes that plaintiffs have not shown that common issues would predominate over individual issues as required by Rule 23(b)(3).  For that reason, plaintiffs' motion for certification of a damages class is DENIED.  As discussed above, the court need not

the opinion provides no indication that any Doe substitutions were ultimately made.

United States District Court
Northern District of California

1    address the Rule 23(a) factors as they relate to the proposed damages class.

2        2.    Injunctive relief class

3        Certification under Rule 23(b)(2) is appropriate where the opposing party "has

4    acted or refused to act on grounds generally applicable to the class, thereby making

5    appropriate final injunctive relief or corresponding declaratory relief with respect to the

6    class as a whole."  Fed. R. Civ. P. 23(b)(2).

7        As an initial matter, the court points out the lack of clarity in plaintiffs' pursuit of

8    injunctive relief.  Neither the complaint nor the amended complaint sets forth the scope or

9    nature of the injunction that plaintiffs are seeking.  Plaintiffs' class certification motion

10   similarly fails to specify what type of injunction they seek the court to impose.  In their

11   reply brief, plaintiffs state for the first time that they are seeking to enjoin "the

12   indiscriminate use of impact munitions and batons on peaceful protestors," and "to

13   ensure the written policy is followed, plaintiffs also seek training and accountability

14   measures."  Dkt. 103 at 16.  No further details are provided.

15       Even putting aside any vagueness problems, the larger obstacle to certification

16   under Rule 23(b)(2) is the cross-cutting, non-overlapping nature of the various claims

17   brought by different plaintiffs against different defendants.  In contrast, in the MIWON

18   case cited above, the court certified an injunctive relief class in a case where plaintiffs

19   brought suit against only LAPD command personnel, and "focus[ed] on the LAPD

20   commanders' authorization of 'less lethal' force (as distinct from the application of such

21   force)."  MIWON, 246 F.R.D. at 635 (emphasis in original).  However, as discussed

22   above, the plaintiffs in this case did not focus their claims in a similar manner.  Rather

23   than bringing suit against only command personnel and focusing on their authorization of

24   force, the plaintiffs in this case challenge both the authorization of force by command

25   personnel as well as the application of force by line officers.  The number of individual,

26   non-overlapping claims brought by different sets of plaintiffs against different sets of

27   defendants prevents the court from concluding that defendants' conduct applies generally

28   to the class, and accordingly, plaintiffs' motion for certification of an injunctive relief class

1    is DENIED.  As discussed above, the court need not address the Rule 23(a) factors as

2    they apply to the proposed injunctive relief class.

3    C.      Other issues

4            1.       Discovery letter brief

5            Also before the court is a discovery dispute between the parties.  The discovery

6    dispute is a request by defendants to "preclude plaintiff Acosta's claim for future income

7    loss based on documents plaintiffs did not provide in initial disclosures or during

8    discovery."  Dkt. 102 at 1.

9            The essence of defendants' argument is that plaintiffs waited until after the close

10   of discovery to reveal that plaintiff Acosta would be pursuing damages based on lost

11   future income.  Dkt. 102 at 1.  Defendants argue that the late disclosure prevents them

12   from taking discovery from Acosta's employer and coworkers.  Defendants thus ask for

13   an order precluding Acosta from pursuing damages based on lost future income, and

14   from using any documents related to Acosta's employment that were not provided before

15   the close of discovery.  Defendants' request is made pursuant to Rules 26 and 37.  Rule

16   26 requires a party to disclose damages-related information and to supplement or correct

17   those disclosures in a timely manner, and Rule 37 forbids the use at trial of information

18   that was not properly disclosed, unless the failure to disclose was substantially justified or

19   harmless.  See Fed. R. Civ. P. 26, 37; R & R Sails, Inc. v. Insurance Co. of Penn., 673

20   F.3d 1240, 1246 (9th Cir. 2012).

21          Plaintiffs argue that "Acosta's discovery responses have always made clear that

22   he might have a future wage loss claim," and cite to interrogatory responses stating that

23   "he is struggling to keep up at his demanding job" and "the amount of any future wage

24   loss is undetermined at this time."  Dkt. 102 at 4.  Plaintiffs argue that "when defendants

25   requested documents supporting a claim for loss of income or earning capacity in

26   October 2021, no such documents existed and any future wage loss was speculative,"

27   but "in October and November 2022, events transpired that made it more likely that Mr.

28   Acosta could suffer an injury-related future income loss."  Id.  Specifically, plaintiffs point

United States District Court
Northern District of California

11

1    to Acosta's job performance review in October 2022 that was "significantly less positive"

2    than prior reviews, and to news of a "tech downturn" in November 2022, arguing that

3    those events turned a speculative wage-loss claim into a non-speculative one.

4        Overall, plaintiffs have not shown that their failure to timely disclose was

5    substantially justified or harmless.  Essentially, they argue that Acosta was aware of his

6    own limitations, but was not aware that his supervisor had noticed until the performance

7    review in October 2022.  First of all, the fact discovery cutoff was not until November 14,

8    2022, so plaintiffs still could have made the disclosure before the close of discovery – but

9    more importantly, Acosta himself is in the best position to assess whether he feels that

10   his work performance was affected, and by plaintiffs' own account, he was aware of that

11   at least as early as July 2022.  Accordingly, defendants' request to preclude the claim of

12   future income loss and the late-produced documents is GRANTED.

13       2.    Motion to seal

14       In connection with the discovery letter brief, plaintiffs filed a motion to seal.  <u>See</u>

15   Dkt. 97.  Because the motion sought the sealing of entire exhibits, rather than seeking

16   limited redactions of truly sensitive information, the court denied the motion to seal

17   without prejudice.  <u>See</u> Dkt. 100.

18       Plaintiffs have filed a revised motion to seal, but in addition to seeking the sealing

19   of medical and mental health information, plaintiffs also seek the sealing of information

20   related to plaintiff's employment, such as salary information and the names of products

21   that plaintiff worked on.  <u>See</u> Dkt. 101.

22       To the extent that plaintiffs seek the sealing of medical and/or mental health

23   information, the motion to seal is GRANTED.  However, to the extent that plaintiffs seek

24   the sealing of information related to plaintiff Acosta's employment, the motion to seal is

25   DENIED.  Plaintiffs are directed to re-file the exhibits with only medical or mental health

26   information redacted from public filing.

27                                    **CONCLUSION**

28       For the foregoing reasons, plaintiffs' motion for class certification (Dkt. 87) is

United States District Court
Northern District of California

1    DENIED as to both the proposed damages class under Rule 23(b)(3) as well as the

2    proposed injunctive relief class under Rule 23(b)(2).  Defendants' discovery request to

3    preclude evidence based on Acosta's future lost income (Dkt. 102) is GRANTED, and

4    plaintiffs' motion to seal (Dkt. 101) is GRANTED in part and DENIED in part.

5         **IT IS SO ORDERED.**

6    Dated:  April 7, 2023

7                                    _____/s/ *Phyllis J. Hamilton*_____
                                     PHYLLIS J. HAMILTON
8                                    United States District Judge