UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NAACP OF SAN JOSE/ SILICON
VALLEY, et al.,

        Plaintiffs,

    v.

CITY OF SAN JOSE, et al.,

        Defendants.

Case No.  21-cv-01705-PJH

**ORDER RE MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 121

Defendants' motion for summary judgment came on for hearing on June 1, 2023. Plaintiffs appeared through their counsel, Rachel Lederman, Chris Johnson, and Robert Flynn. Defendants appeared through their counsel, Matthew Pritchard. Having read the papers filed by the parties and carefully considered their arguments and relevant authority, and good cause appearing, the court hereby rules as follows.

## BACKGROUND

This is a civil rights case arising out of the May 2020 protests in response to the killing of George Floyd by police. Specifically, on May 29 and 30, 2020, plaintiffs participated in protests in San Jose to "express their view that police brutality and institutionalized racism must end," and now "seek redress for the violation of their constitutional rights to assemble, protest, and be free from racial discrimination, disability discrimination, [and] excessive force." Dkt. 108, ¶¶ 2, 3.

There are two organizational plaintiffs and eleven individual plaintiffs in this case. The organizational plaintiffs are (1) the National Association for the Advancement of Colored People of San Jose/Silicon Valley, and (2) the San Jose Peace and Justice Center. Dkt. 108, ¶¶ 14-15. The eleven individual plaintiffs are as follows:

The first plaintiff is Michael Acosta. The complaint alleges that Acosta was shot in

the eye with projectile impact weapons ("PIW").  Dkt. 108, ¶ 16.  He ultimately lost vision in his eye, and his eye globe had to be removed.  Id., ¶ 95.

The second plaintiff is Joseph Maldonado.  The complaint alleges that he was shot with teargas while at the protests.  Dkt. 108, ¶ 17.

The third plaintiff is Mahmoudreza Naemeh.  The complaint alleges that he was shot with PIW and pushed to the ground.  Dkt. 108, ¶ 18.

The fourth plaintiff is Megan Swift.  The complaint alleges that she was clubbed while at the protests.  Dkt. 108, ¶ 19.

The fifth plaintiff is Joseph Cañas.  The complaint alleges that Cañas was at the protest on May 29, 2020, playing a guitar, when he was shot in the eye by an impact munition.  Dkt. 108, ¶ 20.

The sixth plaintiff is Leslie Vasquez.  The complaint alleges that Vasquez attended the May 29, 2020 protest and was shot in the groin, thighs, and genital area, and bludgeoned in the stomach with a baton as she stood with her hands up.  Dkt. 108, ¶ 21.

The seventh plaintiff is Peter Allen.  Dkt. 108, ¶ 22.  The complaint alleges that Allen attended the protest on May 29, 2020, and was pushed to the ground and repeatedly shot with impact munitions.  Allen alleges that he was backing away when he was shoved to the ground by an officer with his baton, then shoved to the ground again when he tried to get up and back away.  Id., ¶ 111.  Allen alleges that he was again attempting to retreat when he was shot in the thigh and in the chest with PIW.  Id., ¶ 112-113.

The eighth plaintiff is Shaunn Cartwright.  The complaint alleges that Cartwright was shot in the knee, calf, and finger with PIW on May 30, 2020.  Dkt. 108, ¶ 23.

The ninth plaintiff is Yessica Riles.  Dkt. 108, ¶ 24.  The complaint alleges that Riles was shot with PIW in the abdomen while her hands were up in a 'don't shoot' gesture.  Id., ¶ 78.

The tenth plaintiff is Gustavo Flores Rodriguez (also referred to as Gustavo Flores).  Dkt. 108, ¶ 25.  The complaint alleges that Flores was present at the May 29,

1   2020 protest, and "tried to warn the other demonstrators, walking down the front line of

2   demonstrators suggesting that they put their hands up in a gesture of 'don't shoot' to

3   show they were unarmed [and] did not pose a threat." Id., ¶ 82.  While Flores was doing

4   so,  a San Jose police officer "shot him in the groin and testicle with an impact munition."

5   Id.  Flores fell to the ground, and as he got up, he saw the officer reloading his gun.  Id., ¶

6   83.  As Flores was trying to walk away, someone warned that the officer was aiming at

7   him again, and when Flores turned to look, the officer shot him in his left collarbone with

8   another impact munition.  Id.

9          The eleventh plaintiff is Cindy Cuellar.  Dkt. 108, ¶ 28.  The complaint alleges that

10  Cuellar attended the May 29, 2020 protest and saw officers "shoot impact munitions into

11  the crowd," hitting a friend of hers who is a journalist.  Id., ¶ 71.  When Cuellar went to

12  her friend's aid, an officer shot her in her left calf.  Id.

13         The defendants are as follows:  the City of San Jose, Edgardo Garcia (police chief

14  of the SJPD), Christopher Knopf (SJPD assistant chief of police), Jason Dwyer (SJPD

15  captain and the 'special operations commander' during the May 2020 protests), Brian

16  Matchett (SJPD lieutenant), Steve Lagorio (SJPD lieutenant), Lee Tassio (SJPD

17  sergeant), Ronnie Lopez (SJPD sergeant), John Lynch (SJPD sergeant), Jaren Yuen

18  (SJPD officer), Bill Nguyen (SJPD officer), Clifford Grodin (SJPD officer), Stephen

19  Michael Curry (SJPD officer), Michael Simonini (SJPD officer), Victor Ayala (SJPD

20  officer), James Adgar (SJPD officer), Steve Gaona (SJPD officer), Tyler Moran (SJPD

21  officer), Larry Situ (SJPD officer), and Frank Orabuena (SJPD officer).[1]

22         The complaint purports to assert eleven causes of action, though the first is for

23  "injunctive relief" and the second is for "declaratory relief," which are types of remedies

24  rather than standalone causes of action.  That leaves nine substantive causes of action:

25         (1) violation of First Amendment rights under section 1983, asserted by all

26

27  ─────────────────────
    [1] The complaint also names city manager David Sykes as a defendant, but defendants'
28  motion explains that Sykes was sued only in his official capacity, making the claims
    against him functionally the same as the claims against the city.  See Dkt. 121 at 20, n.1.

United States District Court
Northern District of California

plaintiffs against all defendants;

(2) excessive force in violation of Fourth and Fourteenth Amendments, under section 1983, asserted by all plaintiffs against defendants City of San Jose, Garcia, Knopf, Dwyer, Matchett, and Tassio; and further asserted by plaintiff Acosta against defendants Yuen, Nguyen, Grodin, Lopez, and Lynch; by plaintiff Naemeh against defendants Orabuena, Weber, Situ, and Lopez; by plaintiff Swift against defendants Curry, Silva, and Ayala; by plaintiff Cañas against defendants Yuen and Lopez; by plaintiff Vasquez against defendants Yuen, Simonini, and Lopez; by plaintiff Allen against defendants Yuen and Lopez; by plaintiff Riles against defendant Simonini; by plaintiff Flores against defendants Gaona and Grodin; by plaintiff Cuellar against defendants Simonini, Adgar, Nguyen, Grodin, Moran, and Lynch; and by plaintiff Maldonado against defendant Lagorio;

(3) failure to intervene under section 1983, asserted by all plaintiffs against all defendants;

(4) violation of Title II of the Americans with Disabilities Act, asserted by plaintiff Cartwright against defendant City of San Jose;

(5) violation of section 504 of the Rehabilitation Act, asserted by plaintiff Cartwright against defendant City of San Jose;

(6) violation of the California Bane Act, asserted by all plaintiffs against all defendants;

(7) violation of the California Ralph Act, asserted by all plaintiffs against defendants City of San Jose, Garcia, Knopf, Dwyer, Matchett, and Tassio; and further asserted by plaintiff Acosta against defendants Yuen, Nguyen, Grodin, Lopez, and Lynch; by plaintiff Naemeh against defendants Orabuena, Weber, Situ, and Lopez; by plaintiff Swift against defendants Curry, Silva, and Ayala; by plaintiff Cañas against defendants Yuen and Lopez; by plaintiff Vasquez against defendants Yuen, Simonini, and Lopez; by plaintiff Allen against defendants Yuen and Lopez; by plaintiff Riles against defendant Simonini; by plaintiff Flores against defendants Gaona and Grodin; by plaintiff Cuellar

4

United States District Court
Northern District of California

against defendants Simonini, Adgar, Nguyen, Grodin, Moran, and Lynch; and by plaintiff Maldonado against defendant Lagorio;

(8) assault and battery, asserted by all plaintiffs against defendants City of San Jose, Garcia, Knopf, Dwyer, Matchett, and Tassio; and further asserted by plaintiff Acosta against defendants Yuen, Nguyen, Grodin, Lopez, and Lynch; by plaintiff Naemeh against defendants Orabuena, Weber, Situ, and Lopez; by plaintiff Swift against defendants Curry, Silva, and Ayala; by plaintiff Cañas against defendants Yuen and Lopez; by plaintiff Vasquez against defendants Yuen, Simonini, and Lopez; by plaintiff Allen against defendants Yuen and Lopez; by plaintiff Riles against defendant Simonini; by plaintiff Flores against defendants Gaona and Grodin; by plaintiff Cuellar against defendants Simonini, Adgar, Nguyen, Grodin, Moran, and Lynch; and by plaintiff Maldonado against defendant Lagorio; and

(9) negligence, asserted by all plaintiffs against defendants City of San Jose, Garcia, Knopf, Dwyer, Matchett, and Tassio; and further asserted by plaintiff Acosta against defendants Yuen, Nguyen, Grodin, Lopez, and Lynch; by plaintiff Naemeh against defendants Orabuena, Weber, Situ, and Lopez; by plaintiff Swift against defendants Curry, Silva, and Ayala; by plaintiff Cañas against defendants Yuen and Lopez; by plaintiff Vasquez against defendants Yuen, Simonini, and Lopez; by plaintiff Allen against defendants Yuen and Lopez; by plaintiff Riles against defendant Simonini; by plaintiff Flores against defendants Gaona and Grodin; by plaintiff Cuellar against defendants Simonini, Adgar, Nguyen, Grodin, Moran, and Lynch; and by plaintiff Maldonado against defendant Lagorio.  See Dkt. 108, ¶¶ 206-284.

Defendants now move for summary judgment on all claims.

**DISCUSSION**

A.    Legal standard

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Material facts are those which may

affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  Id.  "A 'scintilla of evidence,' or evidence that is 'merely colorable' or 'not significantly probative,' is not sufficient to present a genuine issue as to a material fact."  United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1542 (9th Cir. 1989) (citation omitted).

Courts recognize two ways for a moving defendant to show the absence of genuine dispute of material fact: (1) proffer evidence affirmatively negating any element of the challenged claim and (2) identify the absence of evidence necessary for plaintiff to substantiate such claim.  Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000) ("In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial.")

"Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or by the depositions, answers to interrogatories, and admissions on file, come forth with specific facts to show that a genuine issue of material fact exists."  Hansen v. United States, 7 F.3d 137, 138 (9th Cir. 1993) (per curiam).  "When the nonmoving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact."  Id.

The court must view the evidence in the light most favorable to the nonmoving party: if evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact.  See Tolan v. Cotton, 134 S. Ct. 1861, 1865 (2014); Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999).  However, when a non-moving party fails to produce evidence rebutting defendants' showing, then an order for summary adjudication is proper.  Nissan Fire, 210 F.3d at 1103 ("If the nonmoving party

United States District Court
Northern District of California

1  fails to produce enough evidence to create a genuine issue of material fact, the moving

2  party wins the motion for summary judgment.")

3  B.      Analysis

4         As an organizational matter, the court starts its analysis with the plaintiffs' Fourth

5  Amendment claims for excessive force, as resolution of those claims will serve to guide

6  the resolution of the remaining claims.

7         Defendants' motion makes a number of different arguments as to the Fourth

8  Amendment claims, some of which are applicable to all plaintiffs as a whole, and some of

9  which are applicable only to certain plaintiffs.  In their reply, defendants include a chart

10  that summarizes their arguments as to each plaintiff.  See Dkt. 140 at 18.  The chart

11  shows that, as to all plaintiffs, defendants argue that there was "no objective intent to

12  restrain," and thus no possible Fourth Amendment violation.  Stated differently,

13  defendants argue that any force used by officers was used with the "intent to disperse"

14  rather than the "intent to restrain."

15         However, the Ninth Circuit in Nelson v. City of Davis has already addressed this

16  very same argument, and has rejected the approach advocated by defendants.  685 F.3d

17  867 (9th Cir. 2012).

18         Nelson involved police attempting to clear a college-town party by shooting

19  pepper-ball projectiles at the partygoers.  This is the relevant passage from Nelson:

20         The officers also argue that their actions could not constitute a seizure
21         because their intent was to disperse the crowd.  The Supreme Court has
          repeatedly held that the Fourth Amendment analysis is not a subjective
22         one.  "The intent that counts under the Fourth Amendment is the intent
          [that] has been conveyed to the person confronted, and the criterion of
23         willful restriction on freedom of movement is no invitation to look to
          subjective intent when determining who is seized."
24
25         …

26         Whether the officers intended to encourage the partygoers to disperse is of
          no importance when determining whether a seizure occurred. The officers
27         took aim and fired their weapons towards Nelson and his associates.
          Regardless of their motives, their application of force was a knowing and
28         willful act that terminated Nelson's freedom of movement. It unquestionably

7

constituted a seizure under the Fourth Amendment.

685 F.3d at 877-88 (internal citations omitted).

The logic of Nelson applies with equal force to the present case. Defendants claim that they intended to encourage the protestors to disperse, but under Nelson, this is of "no importance," because they "took aim and fired their weapons towards" the plaintiffs and their fellow protestors, which was a "knowing and willful act that terminated [their] freedom of movement . . . regardless of their motives." 685 F.3d at 877.

To the extent that defendants rely on the Ninth Circuit's unpublished and non-precedential decision in Jackson-Moeser v. Armstrong, 765 Fed. App'x 299 (2019), or on the Supreme Court's decision in Torres v. Madrid, those decisions do not change the analysis. In particular, the Torres Court addressed only the issue of whether a plaintiff who eludes custody can be deemed "seized," and made clear that "we rarely probe the subjective motivations of police officers in the Fourth Amendment context." 141 S.Ct. 989, 998 (2021). Instead, the Fourth Amendment analysis is an objective one, and looks to whether the "nature and quality of the intrusion on the individual's Fourth Amendment interests" is balanced against the "countervailing government interests." Graham v. Connor, 490 U.S. 386, 395 (1989). In evaluating the government's interest, courts look at (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. Young v. City of Los Angeles, 655 F.3d 1156, 1163 (9th Cir. 2011).

The court now turns to the Fourth Amendment claims brought by each individual plaintiff.

1. Acosta

The complaint asserts Acosta's excessive force claim against Yuen, Nguyen, and Grodin (and the supervisory defendants and City, who will be discussed later in the order).

In addition to the "no intent to restrain" argument that was addressed above,

1   defendants make three additional arguments as to Acosta: (1) the force used against him

2   was accidental, rather than intentional, (2) there is no proof of causation as to the named

3   defendants, and (3) the force was reasonable under the circumstances.

4       As to (1), defendants' argument is that Acosta was not individually targeted as the

5   subject of force.  This argument was directly addressed by the Nelson court:

6       Regardless of whether Nelson was the specific object of governmental
        force, he and his fellow students were the undifferentiated objects of shots
7       intentionally fired by the officers in the direction of that group.  Although the
        officers may have intended that the projectiles explode over the students'
8       heads or against a wall, the officers' conduct resulted in Nelson being hit by
        a projectile that they intentionally fired towards a group of which he was a
9       member.  Their conduct was intentional, it was aimed towards Nelson and
        his group, and it resulted in the application of physical force to Nelson's
10      person as well as the termination of his movement.  Nelson was therefore
        intentionally seized under the Fourth Amendment.
11

12  685 F.3d at 877.

13      Nelson also relied on Supreme Court case law holding that "the intentionality

14  requirement is satisfied when the 'termination of freedom of movement [occurs] through

15  means intentionally applied.'"  Id. at 876 (citing Brower v. County of Inyo, 489 U.S. at 597

16  (emphasis in original)).

17      Applying Nelson, the court concludes that defendants are not entitled to summary

18  judgment based on the argument that Acosta was struck unintentionally.

19      Next is (2), the argument that Acosta does not have proof of causation as to the

20  named defendants.  Defendants argue that the video evidence does not make clear

21  which of the three defendants is the one who fired the shot that hit Acosta, and thus

22  argue that summary judgment should be granted in favor of all three.

23      Plaintiffs, on the other hand, cite to Grandstaff v. City of Borger, Tex., a case

24  where four officers fired towards the decedent, and where the government made the

25  same argument as the defendants in this case – that no single officer could be found to

26  be the person who fired the fatal shot.  The Grandstaff court held that "they may as well

27  argue that no one on a firing squad is responsible for the victim's death unless we know

28  whose bullet first struck the heart."  767 F.2d 161, 168 (5th Cir. 1985).  Although

United States District Court
Northern District of California

1    Grandstaff is a Fifth Circuit case, plaintiffs also cite Ninth Circuit cases reaching similar

2    conclusions.  See Dkt. 128 at 27-28.

3          In support of their argument, plaintiffs cite not only to video evidence taken from

4    police body cameras and from witnesses' smartphones, they also provide a combined

5    version of the videos that syncs up all of the videos to depict the same event occurring

6    from different angles.  See Dkt. 131.

7          However, the video evidence shows that the facts in this case are not analogous

8    to the facts of Grandstaff and the firing-squad example used by the court in that case.  A

9    useful description of what is shown in the video evidence comes in the expert report of

10   former Oakland chief of police Sean Whent, one of plaintiffs' experts.  Whent concludes

11   that it was most likely Yuen who fired the shot that hit Acosta, and while he "would not

12   exclude the possibility of it being" Nguyen or Grodin, he admits that those two scenarios

13   are less likely.  Dkt. 130 at 9.  Where plaintiffs' own expert can state only that he "would

14   not exclude the possibility of it being" Nguyen or Grodin, and with no clear evidentiary

15   support in the video evidence that either Nguyen or Grodin fired the shot that struck

16   Acosta, the court cannot allow the claim against those two defendants to survive

17   summary judgment.  Accordingly, the court concludes that causation issues warrant

18   summary judgment as to Nguyen and Grodin, but not as to Yuen.

19         The court also briefly distinguishes a case cited by defendants (also arising from

20   the 2020 racial justice protests).  See Sanchez v. City of Atherton, 2023 WL 137475

21   (N.D. Cal. Jan. 9, 2023).  In Sanchez, the plaintiff filed suit against three officers who

22   deployed 40mm PIW at the protests, even though he had not alleged that "he was in

23   close proximity to any of the defendants," only that the officers deployed rounds at the

24   same demonstration.  That is not akin to the present case, where plaintiffs have indeed

25   established not only that all three defendants were "in close proximity" to Acosta's

26   location when he was shot, but also that all three deployed their weapons in very close

27   temporal proximity to the moment when Acosta was shot.

28         As to only Yuen, the court will address defendants' argument (3) as to Acosta, that

United States District Court
Northern District of California

the force was reasonable under the circumstances.

Defendants' argument is that Acosta was "at the locus of perhaps the most violent, lawless activity of the entire protest.  A large dumpster on fire, the wanton and open destruction of property, assaults towards police officers (including by lobbing teargas or other objects back at the police line)."  Dkt. 121 at 37.

Plaintiffs' expert concedes that "if an officer reasonably perceived a specific person was about to throw a hard object at them, then it may be reasonable for an officer to use force to prevent such an assault from occurring," but also emphasizes that "Acosta did not commit any violent acts that would justify shooting him with an impact munition," and that "impact munitions cannot be used if officers can't prevent injuries to unintended targets."  Dkt. 130 at 10-12.  While there were other people around Acosta at the time he was shot, and "even if one of those people had thrown an object at the officers, the officer would not be justified in firing into that crowd because they were surrounded by too many people for an officer to ensure that only the target would be struck."  Id. at 11.

Overall, the court concludes that plaintiffs have raised a triable issue of fact as to whether the force used against Acosta was reasonable under the circumstances, and thus whether it was excessive force in violation of the Fourth Amendment.  However, plaintiffs must also overcome the doctrine of qualified immunity.

"In evaluating a grant of qualified immunity, a court considers whether (1) the state actor's conduct violated a constitutional right and (2) the right was clearly established at the time of the alleged misconduct."  Gordon v. County of Orange, 6 F.4th 961, 967-68 (9th Cir. 2021).  "Whether a constitutional right is clearly established is purely a question of law for the court to decide."  Id. at 968 (internal citations omitted).  The court must consider "whether the law was clearly established at the time of the challenged conduct," and "the clearly established right must be defined with specificity."  Felarca v. Birgenau, 891 F.3d 809, 816 (9th Cir. 2018); City of Escondido, Cal. v. Emmons, 139 S.Ct. 500, 503 (2019).

In a case arising out of similar facts as the present case, another court in this

1    district framed the relevant qualified immunity question as "whether it was clearly

2    established that an officer could not shoot a projectile at an individual who was peacefully

3    protesting."  Sanderlin v. City of San Jose, 2023 WL 2562400 at *11 (N.D. Cal. Mar. 16,

4    2023).  Relying on the Ninth Circuit's opinion in Nelson, in which qualified immunity was

5    denied, the Sanderlin court concluded that defendants had sufficient notice that their

6    actions were unconstitutional.  Id. at *12 (citing Nelson, 685 F.3d at 872-77).  Specifically,

7    the Nelson court held that, "[u]nder the factual circumstances present in this case, a

8    reasonable officer would have been on notice that both the firing of a projectile that risked

9    causing serious harm, in the direction of non-threatening individuals who had committed

10   at most minor misdemeanors, and the release of pepper spray in the area occupied by

11   those individuals, would constitute unreasonable force in violation of the Fourth

12   Amendment."  685 F.3d at 886.  To the extent that defendants attempt to argue that no

13   previous case involved the specific 37mm projectile impact weapons which were used

14   against Acosta, the court notes that Nelson and other cases have made clear that "an

15   officer is not entitled to qualified immunity on the ground that the law is not clearly

16   established every time a novel method is used to inflict injury."  Id. at 884 (citing Deorle v.

17   Rutherford, 272 F.3d 1272, 1286 (9th Cir. 2001) (quoting Mendoza v. Block, 27 F.3d

18   1357, 1362 (9th Cir. 1994)).

19        Overall, the court concludes that the reasoning of the Sanderlin court is persuasive

20   and adopts it in this case.  Accordingly, the court concludes that, at the time of the events

21   giving rise to this case, it was clearly established by the Ninth Circuit in Nelson that an

22   officer could not constitutionally shoot a projectile that risked causing serious harm in the

23   direction of non-threatening individuals who had committed, at most, minor

24   misdemeanors, and thus, defendants' motion for summary judgment based on qualified

25   immunity for Yuen as to his alleged shooting of Acosta must be DENIED.

26        Acosta's Fourth Amendment claim against Yuen will therefore proceed to a jury.

27   Acosta also asserts his Fourth Amendment claim against SJPD supervisors and against

28   the City of San Jose, and those claims will be discussed later in the order, along with

1    other claims brought by Acosta under the First Amendment and under state law.

2         2.    Maldonado

3         Plaintiff Maldonado alleges in the complaint that he was subjected to "a chemical

4    agent, most likely teargas."  Dkt. 108, ¶ 83-85.  However, plaintiff Maldonado has not

5    identified the individual(s) who deployed the chemical agents, instead asserting his

6    Fourth Amendment claim against only supervisory defendants and the City.

7         Defendants argue that plaintiffs cannot maintain a claim where they cannot identify

8    an officer who caused their alleged injury, emphasizing that "there were other agencies

9    using force at the protest," including the Santa Clara County Sheriff's Office and the

10   Santa Clara Police Department.  See Dkt. 140 at 17; Dkt. 121 at 18.

11        The court agrees that, in this case, a plaintiff's Fourth Amendment claim against

12   the San Jose Police Department and its employees cannot go forward where officers

13   from other agencies were using force and where a plaintiff cannot identify the officer(s)

14   who used the alleged force against him.  For that reason, summary judgment must be

15   granted as to all claims asserted by plaintiff Maldonado.  As stated above, plaintiff

16   Maldonado has no viable Fourth Amendment claim against either non-supervisory

17   defendants or supervisory defendants.  At the hearing, plaintiffs' counsel clarified that

18   their theory of relief under the First Amendment is that defendants used excessive force

19   in retaliation for plaintiffs' expression of their viewpoint, which means that, where a

20   plaintiff does not have a viable excessive force claim, that plaintiff also does not have a

21   viable First Amendment claim under that theory.  As to plaintiffs' claim for failure to

22   intervene, that claim can also not be viable without an underlying constitutional tort.  To

23   the extent that plaintiffs attempt to assert an alternative theory of a due process violation

24   under the Fourteenth Amendment, that claim fails because it was not properly pleaded

25   nor actually litigated during the course of discovery.  Finally, both parties agree that

26   plaintiffs' state law claims are based on the same theories as their federal § 1983 claims,

27   and thus rise and fall together.  As a result, as to plaintiff Maldonado, defendants' motion

28   for summary judgment is GRANTED as to all of his claims.

United States District Court
Northern District of California

3.     Naemeh

The complaint asserts Naemeh's excessive force claim against Orabuena, Weber, and Situ, as well as supervisory defendants and the City of San Jose.

The opposition argues only that Orabuena shot Naemeh with PIW, and that Situ used unreasonable force by tackling him when he was not resisting.  Dkt. 128 at 39.  That seems to concede that Weber is not properly part of this claim, thus, summary judgment is GRANTED as to all claims asserted by Naemeh against Weber.

In addition to the 'no intent to restrain' argument addressed above, defendants make one additional argument as to Naemeh: that the force was reasonable under the circumstances.

As to Orabuena, defendants argue that he was told by another officer (Weber) that a person wearing a paintball mask was throwing frozen water bottles at officers and was hiding behind a planter.  See Dkt. 121 at 38.  According to defendants, Orabuena reasonably believed that Naemeh had been throwing frozen water bottles at officers, which justified the use of force against him.

The court concludes that, after considering the facts known to Orabuena and the doctrine of qualified immunity, summary judgment must be granted in his favor.  Even if Orabuena was mistaken about his belief that Naemeh was responsible for throwing frozen water bottles at officers, plaintiffs have not provided the court with a basis for concluding that such a belief was unreasonable, and thus, the use of force would be covered by qualified immunity.  See, e.g., Hopson v. Alexander, 71 F.4th 692, 700 (9th Cir. 2023) ("In performing the qualified immunity analysis, we do not second-guess officers' real-time decisions from the standpoint of perfect hindsight.") (internal citation omitted).  Accordingly, defendants' motion for summary judgment is GRANTED as to the claims asserted by plaintiff Naemeh against defendant Orabuena.

Similarly, although Naemeh's encounter with Situ occurred approximately an hour later, the parties appear to agree that Situ's use of force and his arrest of Naemeh were made in connection with the earlier suspicion that Naemeh had thrown frozen water

bottles at officers.  Plaintiffs' expert Whent opines that "Situ clearly had been looking for Naemeh as officers had identified him as a person that had been throwing objects."  Dkt. 130 at 33.  The Whent report further opines that Naemeh began to run as Situ approached, and that the force was used incident to arrest.  Accordingly, after considering all of these facts, along with the doctrine of qualified immunity, the court concludes that defendants' motion for summary judgment must also be GRANTED as to the claims asserted by plaintiff Naemeh against defendant Situ.

As discussed above in the context of plaintiff Maldonado, where a plaintiff has no viable Fourth Amendment claim against any non-supervisory defendant, that plaintiff also cannot assert a viable Fourth Amendment claim against a supervisory defendant or against the City of San Jose.  Thus, summary judgment is warranted as to the entirety of plaintiff Naemeh's Fourth Amendment claim.  And as also discussed above, the lack of a viable excessive force claim also renders unviable plaintiff Naemeh's First Amendment claim and 'failure to intervene' claim.  For the same reasons as discussed above, plaintiff Naemeh also cannot assert a theory under the Fourteenth Amendment, and because his state law claims are based on the same allegations as his federal claims, they rise and fall together.  Accordingly, the court concludes that defendants' motion for summary judgment must be GRANTED as to all claims asserted by plaintiff Naemeh.

4.    Swift

The complaint asserts Swift's excessive force claim against Curry, Silva, and Ayala (and the supervisory defendants and City).

Plaintiffs' opposition argues that all three officer defendants used unreasonable force on Swift by clubbing and shoving her.  See Dkt. 128 at 36.

Defendants argue that Silva was improperly added to the complaint, and should be dismissed for that reason.  See Dkt. 121 at 32, n.2.  Specifically, when plaintiffs moved for leave to amend the complaint, Silva's name was not included in the amended complaint.  See Dkt. 70-1.  Even after the court partially granted the motion for leave and directed plaintiffs to file a proposed amended complaint, that version did not include Silva

1    either.  See Dkt. 94.  Only after the court issued an order directing plaintiffs to file the

2    proposed amended complaint as the new operative complaint – only then did Silva's

3    name appear, and even then, his name is not in the complaint's caption, but only in the

4    body.  Also, defendants allege that Silva was never served with the complaint.  Overall,

5    the court concludes Silva was indeed improperly added, and he is not a proper defendant

6    on this claim.

7            That leaves the claims against Curry and Ayala.  Defendants argue that the force

8    was reasonable because it was "de minimis."  Dkt. 121 at 32-33.

9            The Ninth Circuit has made clear that baton strikes are considered "intermediate

10   force."  See, e.g., Young v. County of Los Angeles, 655 F.3d at 1162.  The Young court

11   also established when such force may – or more specifically, may not – be used: "Our

12   conclusion comports with the logical notion that it is rarely necessary, if ever, for a police

13   officer to employ substantial force without warning against an individual who is suspected

14   only of minor offenses, is not resisting arrest, and, most important, does not pose any

15   apparent threat to officer or public safety."  Id. at 1167; see also Gravelet-Blondin v.

16   Shelton, 728 F.3d 1086, 1093 (9th Cir. 2013) ("The right to be free from the application of

17   non-trivial force for engaging in mere passive resistance was clearly established prior to

18   2008.").

19          While plaintiffs' expert concedes that defendants had probable cause to arrest

20   Swift – and indeed, plaintiffs do not challenge Swift's arrest – he opines that defendants

21   "shoved or jabbed her at least seventeen times which is excessive for the level of threat

22   that she posed."  Dkt. 130 at 37.

23          Viewing the evidence in a light most favorable to the non-moving party, the court

24   concludes that there remains a triable issue of fact as to the reasonableness of the force

25   used against Swift by Curry and Ayala, and that qualified immunity does not shield the

26   defendants from liability.  Accordingly, defendants' motion for summary judgment is

27   DENIED as to Swift's Fourth Amendment claim against Curry and Ayala.

28          Swift also asserts a Fourth Amendment claim against supervisory defendants and

United States District Court
Northern District of California

United States District Court
Northern District of California

1   the City of San Jose, and those claims will be discussed later in the order, along with

2   other claims brought by Swift under the First Amendment and under state law.

3        5.     Cañas

4        The complaint asserts Cañas's excessive force claim against Yuen (and the

5   supervisory defendants and City).

6        The opposition alleges that "video produced by defendants has revealed that it

7   was defendant Simonini who shot Joseph Cañas."  Dkt. 128 at 33.  Plaintiffs "concede

8   that Yuen did not shoot Cañas," and instead seek to assert this claim against Simonini.

9   Id.

10       While the court appreciates plaintiffs' candor about making the correct

11  identification, the fact remains that it is too late for plaintiffs to change course.  To have

12  given defendants proper notice, plaintiffs would have needed to move to amend the

13  complaint to make this change before the deadline for doing so.  Plaintiffs cannot assert a

14  new legal theory for the first time on summary judgment, and for that reason, summary

15  judgment must be GRANTED as to the Fourth Amendment claim asserted against Yuen

16  by plaintiff Cañas.  Additionally, the court also notes that plaintiffs' own expert report does

17  not conclude that Simonini was the officer who shot Cañas, instead maintaining that "it is

18  unknown which officer specifically fired the round that hit Cañas."  Dkt. 130 at 14.

19       As discussed above in the context of plaintiffs Maldonado and Naemeh, the lack of

20  a viable Fourth Amendment claim against any non-supervisory defendant also precludes

21  a viable Fourth Amendment claim against a supervisory defendant or against the City of

22  San Jose.  The lack of a viable excessive force claim against any defendant, in turn,

23  renders unviable plaintiff Cañas's First Amendment and 'failure to intervene' claims.  And

24  for the reasons discussed above, plaintiff Cañas also cannot assert any viable Fourteenth

25  Amendment claim or state law claims.  Thus, the court concludes that defendants' motion

26  for summary judgment must be GRANTED as to all claims asserted by plaintiff Cañas.

27      6.     Vasquez

28       The complaint asserts Vasquez's excessive force claim against Yuen and

Simonini (and the supervisory defendants and City).

Plaintiffs' opposition narrows the claim to defendant Simonini (and the supervisors and City). See Dkt. 128 at 33. Thus, summary judgment is GRANTED as to all claims asserted by Vasquez against Yuen.

Plaintiffs allege that Simonini's force was unreasonable because he shot 37mm directly into a crowd, and because he shot Vasquez in the groin and inner thighs. Plaintiffs further allege that an unidentified officer struck Vasquez in the stomach with a baton, causing further bruising. Id. at 34.

As an initial matter, because Vasquez cannot identify the officer who struck her with a baton, summary judgment is GRANTED to the extent that any claim is based on those allegations.

As to the PIW-related allegations, defendants argue that the evidence shows only that Simonini was firing PIW in the vicinity of where Vasquez was standing, and further argue that the use of force was minimal. See Dkt. 121 at 25-26.

Overall, the court concludes that the Fourth Amendment claim of Vasquez is to be analyzed similarly to the Fourth Amendment claim of Acosta, discussed above. Like Acosta, Vasquez was struck with PIW while passively protesting. And like Acosta, the fact that Vasquez may not have been intentionally targeted is not relevant to the analysis, because the force occurred "through means intentionally applied." And, as with Acosta's claim, the Ninth Circuit's opinion in Nelson forecloses any claim of qualified immunity by the officers who fired the PIW. Notably, plaintiffs' expert report cites Officer Simonini's own deposition testimony, acknowledging that PIW are not intended to be used against passive resisters. Dkt. 130 at 17. Accordingly, defendants' motion for summary judgment is DENIED as to the Fourth Amendment claim asserted by plaintiff Vasquez against defendant Simonini.

Vasquez also asserts a Fourth Amendment claim against supervisory defendants and the City of San Jose, and those claims will be discussed later in the order, along with other claims brought by Vasquez under the First Amendment and under state law.

1          7.       Allen

2          The complaint asserts Allen's excessive force claim against Yuen (and the

3   supervisory defendants and City).

4          Plaintiffs' opposition alleges that Yuen knocked Allen to the ground as he was

5   trying to walk in the direction indicated by the officers.  See Dkt. 128 at 37.  Plaintiffs

6   further allege that an unknown officer shot Allen with PIW in the chest area.  Id.

7          Defendants argue in reply that the PIW-allegations are barred, because they were

8   not identified in interrogatory responses asking for all alleged unconstitutional uses of

9   force.  But at the hearing, plaintiffs cited discovery responses showing that the PIW

10  allegations were indeed made known to defendants, and defendants conceded as much.

11  Regardless, because Allen has not identified which officer fired the PIW that struck him,

12  any claims based on that conduct are not viable.

13         The only individual that Allen identifies as using force on him is defendant Yuen,

14  who is alleged to have shoved him to the ground while holding his baton with both hands.

15  See Dkt. 130 at 18-19.  The video evidence also shows that Yuen deployed PIW shortly

16  after the shove, but plaintiffs' expert concedes that Yuen's shots were fired in a different

17  direction from where Allen had stood up and begun walking.  See Dkt. 130 at 19.  Thus,

18  when considering Allen's Fourth Amendment claim against Yuen, the court will consider

19  only the shove with his baton.

20         As discussed above, in the context of Swift's claim, use of a baton is generally

21  considered intermediate force.  And, as also discussed above in the context of Swift's

22  claim, it was clearly established at the time of events giving rise to this suit that such

23  force was excessive when used against "an individual who is suspected only of minor

24  offenses, is not resisting arrest, and, most important, does not pose any apparent threat

25  to officer or public safety."  See Young at 1167.

26         Viewing the evidence in a light most favorable to the non-moving party, the court

27  concludes that there remains a triable issue of fact as to the reasonableness of the force

28  used against Allen by Yuen, and that qualified immunity does not shield Yuen from

United States District Court
Northern District of California

1    liability.  Accordingly, defendants' motion for summary judgment is DENIED as to Allen's

2    Fourth Amendment claim against Yuen.

3         Allen also asserts a Fourth Amendment claim against supervisory defendants and

4    the City of San Jose, and those claims will be discussed later in the order, along with

5    other claims brought by Allen under the First Amendment and under state law.

6         8.    Riles

7         The complaint asserts Riles's excessive force claim against Simonini (and the

8    supervisory defendants and City).

9         Plaintiffs' opposition alleges that either Simonini or officer Zachary Preuss shot

10   Riles.  See Dkt. 128 at 34.  Preuss was not properly added as a defendant on this claim

11   (or to the complaint at all), so there is no need to analyze the claims against him.

12        As to Simonini, Riles alleges that Simonini's body camera shows him shooting

13   towards her and Vasquez.

14        Defendants raise a causation issue here, arguing that there is no video evidence

15   showing Simonini shooting Riles.  While the lack of video evidence does not necessarily

16   doom Riles's claim, defendants have identified a related problem with Riles's current

17   allegations.  Riles initially testified at her deposition that she was shot before she was

18   standing next to her sister (Vasquez), but she now argues in the opposition brief that she

19   was shot while standing next to her sister.  See Dkt. 128 at 34.  The court also notes that

20   the Whent report describes the general circumstances under which Riles was shot, but

21   does not identify Simonini as the shooter.

22        Given the lack of evidence tying Simonini to the shooting of Riles, and given

23   plaintiff's inconsistent testimony about when she was shot, and given the expert's silence

24   on the identity of the shooter – the court concludes that all of these factors cast too much

25   doubt on the identity of the officer who fired the rounds that struck Riles to allow this

26   claim to go to trial.  Instead, this claim is more analogous to the claims of plaintiffs who

27   cannot identify the shooter, and whose claims against SJPD thus fail because of the

28   other agencies present at the relevant protests.  Accordingly, the court concludes that

United States District Court
Northern District of California

summary judgment must be GRANTED as to all claims asserted by plaintiff Riles.

As discussed above in the context of plaintiffs Maldonado, Naemeh, and Cañas, the lack of a viable Fourth Amendment claim against any non-supervisory defendant also precludes a viable Fourth Amendment claim against a supervisory defendant or against the City of San Jose.  The lack of a viable excessive force claim against any defendant, in turn, renders unviable plaintiff Riles's First Amendment and 'failure to intervene' claims. And for the reasons discussed above, plaintiff Riles also cannot assert any viable Fourteenth Amendment claim or state law claims.  Thus, the court concludes that defendants' motion for summary judgment must be GRANTED as to all claims asserted by plaintiff Riles.

9.     Flores

The complaint asserts Flores's Fourth Amendment claim against Gaona and Grodin, as well as supervisory defendants and the City of San Jose.

Plaintiffs' opposition narrows the claim to defendant Gaona (and the supervisory defendants and City).  See Dkt. 128 at 34.  Thus, summary judgment is GRANTED as to the claims asserted by Flores against Grodin.

Plaintiffs allege that Gaona's force was unreasonable because he shot Flores with 40mm PIW in his testicle, and on his shoulder as he was walking away.  Id. at 35.

Defendants argue that the force was reasonable due to the actions of other people at the demonstration, and it was reasonable for Gaona to conclude that Flores was throwing objects at police because he "paced in front of the police line with something in his hands."  Dkt. 121 at 29.

The court concludes that, after considering the facts around Gaona's use of force, and the doctrine of qualified immunity, that summary judgment must be denied.  "Pacing" in front of the police with "something" in one's hands does not justify the use of PIW, for the reasons expressed in Nelson and followed in Sanderlin.  Many of the people at the protests were holding cell phones, including to take photos or videos, and it cannot be reasonable for officers to conclude that everyone holding "something" in their hands is

21

1    subject to PIW or an equivalent level of force just because that unidentified object might

2    conceivably be used as a weapon.  Accordingly, defendants' motion for summary

3    judgment is DENIED as to the Fourth Amendment claim asserted by plaintiff Flores

4    against defendant Gaona.

5         Flores also asserts a Fourth Amendment claim against supervisory defendants

6    and the City of San Jose, and those claims will be discussed later in the order, along with

7    other claims brought by Flores under the First Amendment and under state law.

8         10.    Cuellar

9         The complaint asserts Cuellar's excessive force claim against Simonini, Adgar,

10   Nguyen, Grodin, and Moran (and the supervisory defendants and City).

11        Plaintiffs' opposition appears to narrow the claim to defendant Simonini (and the

12   supervisors and City).  See Dkt. 128 at 35-36.  Thus, summary judgment is GRANTED as

13   to the claims asserted by Cuellar against Adgar, Nguyen, Grodin, and Moran.

14        Plaintiffs allege that Simonini's force was unreasonable because he shot 37mm

15   PIW at least four times near demonstrators' legs, striking her in the calf.  Id. at 36.

16        Defendants raise a causation issue here, arguing that plaintiffs have established

17   only that Simonini was shooting 37mm PIW in the general area that Cuellar was in.  They

18   point to the Whent report, noting that it does not identify Simonini as the shooter.  Dkt.

19   140 at 22 (citing Dkt. 130 at 28-31).

20        The court agrees with defendants on the causation issue.  Unlike with Acosta,

21   where plaintiffs pinned down the relative locations of plaintiff and defendant, all that is

22   established here is that they were around the same general area, without more.

23        Accordingly, because the court concludes that Cuellar has not adequately

24   identified the officer who fired the shots that struck her, summary judgment is GRANTED

25   as to her Fourth Amendment claim against Simonini.

26        As discussed above in the context of plaintiffs Maldonado, Naemeh, Cañas, and

27   Riles, the lack of a viable Fourth Amendment claim against any non-supervisory

28   defendant also precludes a viable Fourth Amendment claim against a supervisory

1   defendant or against the City of San Jose.  The lack of a viable excessive force claim

2   against any defendant, in turn, renders unviable plaintiff Cuellar's First Amendment and

3   'failure to intervene' claims.  And for the reasons discussed above, plaintiff Cuellar also

4   cannot assert any viable Fourteenth Amendment claim or state law claims.  Thus, the

5   court concludes that defendants' motion for summary judgment must be GRANTED as to

6   all claims asserted by plaintiff Cuellar.

7       11.    Cartwright

8       The complaint does not assert Cartwright's excessive force claim against any

9   individual officers, only against supervisory defendants.

10      However, as discussed above in the context of plaintiff Maldonado, because the

11  relevant events in this case involved not only the San Jose Police Department, but also

12  other law enforcement agencies, a plaintiff cannot maintain claims against the SJPD or

13  its employees without identifying the officers who used the alleged force.  Accordingly,

14  because plaintiff Cartwright cannot identify the officers who allegedly used force against

15  her, defendants' motion for summary judgment is GRANTED as to her Fourth

16  Amendment claim.  The lack of a viable excessive force claim against any defendant, in

17  turn, renders unviable plaintiff Cartwright's First Amendment and 'failure to intervene'

18  claims.  And for the reasons discussed above, plaintiff Cartwright also cannot assert any

19  viable Fourteenth Amendment claim or state law claims.

20      Plaintiff Cartwright also asserts two claims that are unasserted by the other

21  plaintiffs: one under the Americans with Disabilities Act, and one under the Rehabilitation

22  Act.  For the same reasons discussed above, namely that plaintiff Cartwright cannot

23  identify the officers who caused her alleged injury, and thus cannot establish that they

24  were SJPD officers due to the presence of multiple law enforcement agencies at the

25  protest, the court concludes that plaintiff Cartwright's ADA and Rehabilitation Act claims

26  are also subject to summary judgment.

27      Additionally, in order to prevail on a claim under the ADA or Rehabilitation Act, a

28  plaintiff must show, among other things, that her treatment was "by reason of her

United States District Court
Northern District of California

1   disability." Sheehan v. City and County of San Francisco, 743 F.3d 1211, 1232 (9th Cir.

2   2014).  Plaintiffs have provided no evidence showing that plaintiff Cartwright's treatment

3   by police was "by reason of" her disability.

4        Accordingly, defendants' motion for summary judgment is GRANTED as to the

5   ADA and Rehabilitation Act claims asserted by Cartwright.  Because the court already

6   granted summary judgment as to plaintiff Cartwright's other claims, that results in a grant

7   of summary judgment as to all of Cartwright's asserted claims.

8        12.   Organizational plaintiffs

9        In addition to the individual plaintiffs, the complaint also purports to assert claims

10  on behalf of two organizational plaintiffs:  the NAACP of San Jose/Silicon Valley and the

11  San Jose Peace and Justice Center.  The organizational plaintiffs do not assert any

12  claims against non-supervisory officers, only against supervisory defendants and the

13  City.

14       As an initial matter, the court must evaluate whether the organizational plaintiffs

15  have standing to assert their claims.  See, e.g., Bernhardt v. County of Los Angeles, 279

16  F.3d 862, 868 (9th Cir. 2002) ("Federal courts are required sua sponte to examine

17  jurisdictional issues such as standing.").  Defendants raise the issue of standing in their

18  motion, but only in a footnote, citing space limitations.  See Dkt. 121 at 42, n. 4.  Plaintiffs'

19  opposition brief contains no response on the issue of organizational standing.  The Ninth

20  Circuit has held that, "[o]rdinarily, a plaintiff opposing a motion for summary judgment on

21  a standing issue would have to support, with affidavits or other evidence, the factual

22  allegations underlying the assertion of standing because such allegations must ultimately

23  be proven for a plaintiff to prevail." La Asociacion de Trabajadores de Lake Forest v. City

24  of Lake Forest, 624 F.3d 1083, 1088 (9th Cir. 2010) (internal citations omitted).  In this

25  case, plaintiffs' lack of response to defendants' argument leaves the court with no basis

26  upon which to find standing, and thus, defendants' motion for summary judgment is

27  GRANTED as to all claims asserted by the organizational plaintiffs.

28

United States District Court
Northern District of California

13.     Supervisory liability and <u>Monell</u>

As set forth above, plaintiffs Acosta, Swift, Vasquez, Allen, and Flores have viable Fourth Amendment claims against non-supervisory defendants, so the court will now analyze the viability of their Fourth Amendment claims against supervisory defendants and the City of San Jose.

As to supervisory liability, plaintiffs Acosta, Swift, Vasquez, Allen, and Flores each assert a Fourth Amendment claim against defendants Garcia, Knopf, Dwyer, Matchett, and Tassio.  Plaintiff Acosta additionally asserts a Fourth Amendment claim against defendants Lopez and Lynch, and plaintiffs Vasquez and Allen each assert a Fourth Amendment claim against Lopez.

To be held liable on a supervisory liability theory, a supervisor need not be "directly and personally involved in the same way as are the individual officers who are on the scene inflicting constitutional injury."  <u>Starr v. Baca</u>, 652 F.3d 1202, 1205 (9th Cir. 2011).  Rather, the supervisor's participation could include his "own culpable action or inaction in the training, supervision, or control of his subordinates," "his acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others."  <u>Id.</u> at 1205-06.  The requisite involvement can also consist of "setting in motion a series of acts by others."  <u>Id.</u> at 1207.

a.     Garcia and Knopf

Defendants argue that defendant Garcia was not involved in the planning, implementation, or tactics at the protest, and that he merely "received updates from his chain of command remotely."  Dkt. 121 at 42-43.  The court concludes that plaintiffs have not rebutted that showing, and thus, summary judgment is warranted as to plaintiffs' Fourth Amendment claim against defendant Garcia.

As to defendant Knopf, defendants argue that he largely "had no substantive involvement in the tactics or response of SJPD at the protest," other than being involved with the decisions to declare an unlawful assembly and to use tear gas.  Dkt. 121 at 43-44.  Because the Fourth Amendment claims of plaintiffs Acosta, Swift, Vasquez, Allen,

and Flores do not allege injury due to tear gas, Knopf's involvement in the decision to use tear gas is not properly considered as part of these claims.  And because plaintiffs have not provided evidence that defendant Knopf was adequately involved in the decision to use PIW, summary judgment is warranted as to plaintiffs' Fourth Amendment claim against defendant Knopf.

And because plaintiffs have no viable excessive force claim against defendants Garcia and Knopf, their other claims under the First Amendment and under state law are also not viable.  And for the reasons discussed above, plaintiffs' 'failure to intervene' claim and Fourteenth Amendment claim are also subject to summary judgment.  Thus, as to all claims asserted against defendants Garcia and Knopf, defendants' motion for summary judgment is GRANTED.

> b.   Dwyer

As to defendant Dwyer, defendants concede that "he authorized the use of the 37m (or 40mm OC rounds)," but argue that summary judgment is still warranted because the decision was justified due to the actions of the crowd.  See Dkt. 121 at 45-46.  However, as discussed above, the Ninth Circuit in Nelson made clear that "a reasonable officer would have been on notice that both the firing of a projectile that risked causing serious harm, in the direction of non-threatening individuals who had committed at most minor misdemeanors, and the release of pepper spray in the area occupied by those individuals, would constitute unreasonable force in violation of the Fourth Amendment." 685 F.3d at 886; see also Sanderlin, 2023 WL 2562400 at *18 ("the question is whether it was clearly established that an officer could not shoot a projectile at an individual who was peacefully protesting the police.  And the Court finds that it was clearly established.").  Accordingly, because the court concludes that defendant Dwyer was personally involved in the decision to use PIW against non-threatening protestors such as Acosta, Vasquez, and Flores, and because the court concludes that qualified immunity is not warranted under Nelson, defendants' motion for summary judgment is DENIED as to the Fourth Amendment claim brought by plaintiffs Acosta, Vasquez, and Flores against

United States District Court
Northern District of California

defendant Dwyer.  However, because plaintiffs Swift and Allen do not have viable allegations of being struck with PIW, summary judgment is GRANTED as to the Fourth Amendment claim brought by plaintiffs Swift and Allen against defendant Dwyer.

            c.     Matchett

Plaintiffs' opposition brief includes only one paragraph on defendant Matchett, arguing that he gave the order to push the crowd at a certain intersection.  See Dkt. 128 at 51.  Plaintiffs do not provide any evidence that Matchett was personally involved with the specific violations alleged by plaintiffs Acosta, Vasquez, and Flores – namely, the use of PIW.  Nor do plaintiffs adequately tie Matchett's conduct to the alleged excessive force used against Swift and Allen at Cesar Chavez Park.  Thus, the court concludes that defendants' motion for summary judgment must be GRANTED as to the Fourth Amendment claim asserted against defendant Matchett.  And, for the same reasons discussed in the context of defendants Garcia and Knopf, without a viable excessive force claim against this defendant, plaintiffs' other claims also fail, and thus, defendants' motion for summary judgment is GRANTED as to all claims asserted against defendant Matchett.

            d.     Tassio

Defendants concede that Tassio directed defendant Simonini to use his 37mm PIW while responding to a crowd around the area of Santa Clara Street and Eighth Street.  See Dkt. 121 at 47.  As discussed above, Vasquez has asserted a viable Fourth Amendment claim against defendant Simonini, based on her allegation that she was shot with PIW while in a crowd around the area of Santa Clara Street and Seventh Street.  See, e.g., Dkt. 121 at 24-25.  Accordingly, the court concludes that plaintiff Vasquez has made an adequate showing that defendant Tassio was personally involved in her alleged constitutional injury.  And for the same reasons expressed above with respect to defendant Dwyer, the court concludes that qualified immunity is not warranted under Nelson.  Thus, defendants' motion for summary judgment is DENIED as to plaintiff Vasquez's Fourth Amendment claim against defendant Tassio.  However, because

United States District Court
Northern District of California

1   plaintiffs have made no similar showing with respect to plaintiffs Acosta, Swift, Allen, and

2   Flores, defendants' motion for summary judgment is GRANTED as to the Fourth

3   Amendment claim asserted by Acosta, Swift, Allen, and Flores, against Tassio, and as to

4   all other claims asserted by Acosta, Swift, Allen, and Flores against Tassio.

5              e.      Lopez

6        Plaintiffs' theory of liability as to defendant Lopez is that he was the direct

7   supervisor of defendants Yuen and Situ at the scene of the protests.  Because plaintiff

8   Vasquez has no viable claim against either defendants Yuen or Situ, she also has no

9   viable claim against defendant Lopez, and thus, summary judgment is GRANTED as to

10  all claims asserted by plaintiff Vasquez against defendant Lopez.

11       Plaintiffs Acosta and Allen do have a viable Fourth Amendment claim against

12  defendant Yuen, and because defendants have conceded that Lopez directly supervised

13  Yuen's conduct at the relevant protests, the court concludes that plaintiffs have raised a

14  triable issue of fact as to whether Lopez was sufficiently involved in any constitutional

15  injuries suffered by Acosta or Allen, including through acquiescence.  Accordingly,

16  defendants' motion for summary judgment is DENIED as to the Fourth Amendment claim

17  asserted by plaintiffs Acosta and Allen against defendant Lopez.

18             f.      Lynch

19       Defendant Lynch is alleged to be involved only with the actions of defendant

20  Nguyen, one of the defendants alleged to have fired the PIW that struck plaintiff Acosta.

21  However, as discussed above, the court has already concluded that Acosta's claims will

22  not go forward against Nguyen.  Accordingly, summary judgment is also GRANTED as to

23  all claims asserted by plaintiff Acosta against defendant Lynch.

24             g.      Monell claim against the City

25       To the extent that plaintiffs Acosta, Swift, Vasquez, Allen, and Flores have viable

26  Fourth Amendment claims against individual defendants, the court will also evaluate

27  whether those plaintiffs can also assert a viable Fourth Amendment claim against the City

28  of San Jose under a Monell theory.

1     "The Supreme Court in <u>Monell</u> held that municipalities may only be held liable

2  under section 1983 for constitutional violations resulting from official . . . policy or

3  custom." <u>Benavidez v. County of San Diego</u>, 993 F.3d 1134, 1153 (9th Cir. 2021) (citing

4  <u>Monell v. Dep't of Soc. Servs. of City of New York</u>, 436 U.S. 658, 694 (1978)).  The policy

5  or custom must be a "deliberate choice to follow a course of action . . . made from among

6  various alternatives by the official or officials responsible for establishing final policy with

7  respect to the subject matter in question." <u>Id.</u> at 1153 (citing <u>Castro v. County of Los

8  Angeles</u>, 833 F.3d 1060, 1075 (9th Cir. 2016)).

9     Plaintiffs argue that the City's choice to allow use of 37mm and 40mm PIW against

10  protestors, which had not been used at any protest before, was an unconstitutional

11  policy.  Defendants argue that plaintiffs cannot establish an unconstitutional policy or

12  custom based only on a single instance of conduct.  <u>See</u> Dkt. 121 at 56.  However, the

13  Supreme Court has held that "it is plain that municipal liability may be imposed for a

14  single decision by municipal policymakers under appropriate circumstances." <u>Pembaur

15  v. City of Cincinnati</u>, 475 U.S. 469, 480 (1986); <u>see also</u> <u>McRorie v. Shimoda</u>, 795 F.2d

16  780, 784 (9th Cir. 1986), <u>Menotti v, City of Seattle</u>, 409 F.3d 1113, 1147 (9th Cir. 2005).

17     As an initial matter, because the challenged policy or custom relates only to the

18  use of PIW, and because plaintiffs Swift and Allen do not have viable claims arising out of

19  the use of PIW, summary judgment is GRANTED as to all claims asserted by Swift and

20  Allen against the City.

21     As to plaintiffs Acosta, Vasquez, and Flores, the court concludes that plaintiffs

22  have raised a triable issue as to whether the City of San Jose's policy or custom of using

23  PIW against non-threatening protestors was unconstitutional under the law established

24  by the Ninth Circuit in <u>Nelson</u> and related cases.  Thus, the motion for summary judgment

25  is DENIED as to the Fourth Amendment claim brought under <u>Monell</u> against the City of

26  San Jose by plaintiffs Acosta, Vasquez, and Flores.

27     14.     First Amendment

28     As discussed above, for those plaintiffs whose excessive force claims were

29

United States District Court
Northern District of California

deemed unviable, their First Amendment claims are also unviable.  However, because plaintiffs Acosta, Swift, Vasquez, Allen, and Flores do have viable excessive force claims, the court will now also consider whether they have viable First Amendment claims.

To prevail on a First Amendment claim, a plaintiff must show that (1) he was engaged in constitutionally protected activity, (2) defendants' conduct would chill a person of ordinary firmness from continuing to participate in the protected activity, and (3) the protected activity was a "substantial or motivating factor" in the defendants' conduct. See, e.g., Index Newspapers v. U.S. Marshals, 977 F.3d 817, 827 (9th Cir. 2020).  The "substantial or motivating factor" element "may be met with either direct or circumstantial evidence, and we have said that it involves questions of fact that normally should be left for trial."  Id. at 827 (citing Ulrich v. City & County of San Francisco, 308 F.3d 968, 979 (9th Cir. 2002)).

Plaintiffs' argument relies largely on circumstantial evidence.  While they cite individual examples of police officers expressing negative views of protestors, the court will not impute each of those statements to every officer in the San Jose Police Department.  That said, the court also recognizes, as did the Sanderlin court, that "it would be difficult for plaintiffs to produce direct evidence that the officers' subjective motives for the shooting were related to the protests and their subject matters." Sanderlin, 2023 WL 2562400 at *16.  The court further recognizes the unique factual circumstances presented by this case, where the parties alleged to have used excessive force are themselves the subject of the plaintiffs' viewpoint expression.  Thus, there is an inherently oppositional nature between the viewpoint and the police, in contrast with cases where the viewpoint being expressed is unrelated to the police.

Overall, when considering the specific officers for whom a triable issue has been raised as to the reasonableness of their use of force, the court concludes that a reasonable jury could find that the plaintiffs' viewpoint expression was a "substantial or motivating factor" in the uses of force.  However, the court's conclusion is limited to the specific officers alleged to have actually applied the force to the remaining plaintiffs,

1    Acosta, Swift, Vasquez, Allen, and Flores.  As to the supervisory defendants and the City,

2    plaintiffs have not provided the court with a basis for concluding that the plaintiffs'

3    viewpoint was a "substantial or motivating factor" in any of the supervisors' conduct, or in

4    any policy or custom adopted by the City, including the use of PIW.

5          Accordingly, defendants' motion for summary judgment as to the First Amendment

6    claim is DENIED to the extent it is asserted by Acosta against Yuen, by Swift against

7    Curry and Ayala, by Vasquez against Simonini, by Allen against Yuen, and by Flores

8    against Gaona.  As to all other First Amendment claims asserted against all other

9    defendants, the motion for summary judgment is GRANTED.

10         15.     Failure to intervene – fifth cause of action

11         As mentioned above, plaintiffs' complaint purports to assert a fifth cause of action

12    for 'failure to intervene' under section 1983.  Plaintiffs' opposition devotes only a single

13    paragraph to this cause of action, arguing that defendants Yuen, Grodin, Nguyen,

14    Simonini, and Preuss failed to intervene in the First Amendment violations of plaintiffs

15    Acosta and Riles.  See Dkt. 128 at 29.  The court has already concluded that Riles has

16    no viable claim for a First Amendment violation, and as to Acosta, plaintiffs' do not

17    present the court with any basis for concluding that any defendants had a realistic

18    opportunity to intervene to prevent the single shot that struck him, which plaintiffs admit

19    occurred "within seconds of commands to move the line forward."  See Dkt. 128 at 28;

20    see also Cunningham v. Gates, 229 F.3d 1271, 1289 (9th Cir. 2000) ("officers can be

21    held liable for failing to intercede only if they had an opportunity to intercede"); Cortesluna

22    v. Leon, 979 F.3d 645, 656 (9th Cir. 2020) ("there is no evidence that [the officer] knew

23    what the other defendants would do, and the events unfolded very rapidly – in a matter of

24    seconds").  Accordingly, defendants' motion for summary judgment is GRANTED as to

25    plaintiffs' fifth cause of action for failure to intervene.

26         16.     State law claims

27         The parties agree that plaintiffs' state law claims are premised on the same

28    theories and evidence as their federal § 1983 claims, and thus largely rise and fall

United States District Court
Northern District of California

31

1   together.

2   　　　A Bane Act claim has the same elements as an excessive force claim under the

3   Fourth Amendment, with an additional requirement that the defendant intended to

4   interfere with a plaintiff's constitutional rights.  See Reese v. County of Sacramento, 888

5   F.3d 1030, 1045 (9th Cir. 2018).  The Reese court also made clear that the "intent"

6   requirement can be met by "a reckless disregard for a person's constitutional rights."  Id.

7   Defendants argue that the intent requirement cannot be met here, but the court

8   concludes that, as to the defendants against whom plaintiffs Acosta, Swift, Vasquez,

9   Allen, and Flores have a viable Fourth Amendment claim, plaintiffs can show "reckless

10  disregard" for their constitutional rights for the same reasons that the court denied

11  qualified immunity – namely, that plaintiffs had a clearly established right to be free from

12  the force that was used against them in the circumstances they were in.  Thus, to the

13  extent that summary judgment was denied as to the Fourth Amendment claim brought by

14  plaintiffs Acosta, Swift, Vasquez, Allen, and Flores, summary judgment is also DENIED

15  as to the Bane Act claim brought by those plaintiffs.

16  　　　Plaintiffs also assert a claim under California's Ralph Act, which is alleged in the

17  complaint as brought under a viewpoint-discrimination theory.  See Dkt. 108 at 56.  Thus,

18  to the extent that summary judgment was denied as to the First Amendment claim

19  brought by plaintiffs Acosta, Swift, Vasquez, Allen, and Flores, summary judgment is also

20  DENIED as to the Ralph Act claim brought by those plaintiffs.

21  　　　Finally, plaintiffs assert state law claims for assault and battery, and for

22  negligence.  Both are coextensive with a Fourth Amendment excessive force claim, and

23  to the extent that the court denied summary judgment as to the Fourth Amendment claim

24  brought by plaintiffs Acosta, Swift, Vasquez, Allen, and Flores, summary judgment is also

25  DENIED as to the assault and battery claim and negligence claim brought by those

26  plaintiffs.

27  　　　　　　　　　　　　　　　　**CONCLUSION**

28  　　　For the foregoing reasons, defendants' motion for summary judgment (Dkt. 121) is

GRANTED in part and DENIED in part.  Specifically, defendants' motion for summary judgment is DENIED as to only the following claims brought by the following plaintiffs against the following defendants:

Acosta

Fourth Amendment claim against Yuen, Dwyer, Lopez, and City

First Amendment claim against Yuen

Bane Act claim against Yuen, Dwyer, Lopez, and City

Ralph Act claim against Yuen

Assault and battery claim against Yuen, Dwyer, Lopez, and City

Negligence claim against Yuen, Dwyer, Lopez, and City

Swift

Fourth Amendment claim against Curry and Ayala

First Amendment claim against Curry and Ayala

Bane Act claim against Curry and Ayala

Ralph Act claim against Curry and Ayala

Assault and battery claim against Curry and Ayala

Negligence claim against Curry and Ayala

Vasquez

Fourth Amendment claim against Simonini, Dwyer, Tassio, and City

First Amendment claim against Simonini

Bane Act claim against Simonini, Dwyer, Tassio, and City

Ralph Act claim against Simonini

Assault and battery claim against Simonini, Dwyer, Tassio, and City

Negligence claim against Simonini, Dwyer, Tassio, and City

United States District Court
Northern District of California

Allen

Fourth Amendment claim against Yuen and Lopez

First Amendment claim against Yuen

Bane Act claim against Yuen and Lopez

Ralph Act claim against Yuen

Assault and battery claim against Yuen and Lopez

Negligence claim against Yuen and Lopez

Flores

Fourth Amendment claim against Gaona, Dwyer, and City

First Amendment claim against Gaona

Bane Act claim against Gaona, Dwyer, and City

Ralph Act claim against Gaona

Assault and battery claim against Gaona, Dwyer, and City

Negligence claim against Gaona, Dwyer, and City

As to all other claims asserted by all plaintiffs against all defendants, defendants' motion for summary judgment is GRANTED.

**IT IS SO ORDERED.**

Dated:  August 3, 2023

_____/s/ Phyllis J. Hamilton_____
PHYLLIS J. HAMILTON
United States District Judge